THE PEOPLE v. WILLIAM CUMMINS.

*Larceny—Intent necessary—Separate trial of joint offenses—Impeachment of State's evidence—Insanity from drink.*

Larceny involves a taking with felonious intent and is impossible where the existence of such intent is impossible.

Where a jury was empanelled for the trial of joint offenders but a separate trial was ordered, it is immaterial that they were sworn before the order was entered, if sworn for the trial of one only.

Where a person on trial for crime voluntarily offers himself as a general witness, it is discretionary with the trial judge to allow him to be cross-examined as to whether he has been arrested before, or has not been in the State Prison.

One cannot be guilty of larceny whose mind cannot comprehend all the essential ingredients of the offense and recognize their existence; and an instruction that one who knows he has been taking property that did not belong to him is sane enough to commit the offense, is error.

Respondent in a criminal prosecution is entitled to have the theory of his defence clearly recognized in the charge.

Where the defence of temporary insanity proceeds upon the theory that it was induced by the operation of strong drink upon a mind rendered unsound by an injury to the brain, it is error to leave the question of criminal responsibility to be determined upon the facts of injury and mental unsoundness alone, or upon the effect of intoxication apart from the other facts.

Exceptions from Recorder's Court of Detroit. Submitted October 26, 1881. Decided January 5, 1882.

INFORMATION for larceny. Respondent was convicted below. Conviction set aside.

Attorney General *Jacob J. Van Riper* for the People.

*Brennan & Donnelly* for respondent. After the jury is sworn it is too late to grant a separate trial unless a new jury is summoned for each defendant indicted: *Mc Whirt's Case* 3 Grat. 602; *McJunkins v. State* 10 Ind. 140; a witness cannot be cross-examined as to matters which go to prove his criminality: *People v. Thomas* 9 Mich. 321; it is error to charge that if a person accused of crime is too drunk to form a criminal intent, it is no defence: *Roberts v. People* 19 Mich. 410; *People v. Walker* 38 Mich. 156; the test of his criminality is his capacity to have the intent: *Roberts v. State* 3 Kelly (Ga.) 310; *McAllister v. State* 17 Ala. 434.

GRAVES, J. Cummins was convicted in the Recorder's Court of Detroit on a charge of larceny from the person and he comes here for a review on exceptions. He was charged jointly with Murphy, but on the election of the prosecuting attorney a separate trial was ordered by the court. The jurors were however put upon their oaths before the order for separate trial was formally entered in the record and this is made a ground of exception. The point is devoid of merit and it is needless to multiply reasons in refutation. The swearing of the jury and the actual entry of the order occurred at the same stage and if necessary the law would give the same effect to the entry as though in the progress of the proceedings it had been first made. *Hubbardston*

*Lumber Co. v. Covert* 35 Mich. 254, 262, 263; *Rash v. Whitney* 4 Mich. 495.

The jury were in truth sworn for Cummins' separate trial. When the prosecution rested he took advantage of the law of 1881 (Public Acts, 245) and exercised the privilege of being a general witness in his own behalf and testified as fully as he desired. In the course of the cross-examination the court overruled his counsel's objections and allowed him to be questioned as to whether he had been arrested previously and whether he had not been imprisoned in the State Prison.

It is not material to inquire respecting the power to compel answers. The point was not raised. We think it was quite within the discretionary authority of the trial judge to permit the questions. The defendant had voluntarily offered himself to the court and jury as a general witness, and his right to testify and their duty to receive his testimony and consider it were clear and unqualified. It is evident that the course of inquiry referred to was not carried beyond reasonable bounds, and certainly it was not wrong to permit him to be requested in the mode pursued to inform the judgments of the triers as to his former life and behavior.

Complaint is made of rulings to the jury. There is some ground for thinking that the charge given by the learned judge is not correctly reported. As we find it returned it lacks clearness and coherence and was likely to mislead the jury. But the record is controlling and the case must be determined by it. No attempt will be made to compare the different features of the charge or dilate upon them. Only two matters will be adverted to.

The general fitness of the outward circumstances to sustain the accusation was scarcely disputed. The point seriously controverted was the defendant's criminal capacity. And the ground was taken by testimony tending to prove it that some years prior to the act in question the defendant's brain had suffered injury which made him subject to spells of strange and painful feelings in his head, and moreover

rendered him liable, on drinking liquor, which he sometimes did, to become temporarily insane, and that having been drinking on this occasion it had produced this crazing effect and to such extent that he was not conscious of any thievish purpose and was not able to form one. When the court came to deal with this question of criminal responsibility he instructed the jury, as the record tells us, that if the defendant "knew he had been taking property that did not belong to him he was sane enough to commit this offense." By this instruction the defendant's legal accountability was made to depend on his having seen and understood that the property he took was not his own, and certainly such is not the law.

Where the case depends on the sanity of the accused he cannot be convicted of larceny unless the jury are satisfied that his mind was sufficient to see all the essential ingredients of the offense and acknowledge their existence, and the bare recognition of the one fact that the property belonged to another would be only one among several of such ingredients. No enumeration of the required constituents is needful. The text-books will supply the information.

The remaining consideration is more general. On taking into view what instructions were denied and what were given there is reason to apprehend the jury were led to suppose that the question of criminal responsibility was to be solved by looking at the question of mental unsoundness and brain injury, and the question of the effect of liquor and intoxication as separate and unconnected factors. But it was not the theory of the defence that either the injury and mental infirmity on the one hand or the drinking and intoxication on the other, distinctly and separately considered, brought about the alleged incapacity. The position of the defence was that the alleged state of insanity and incapacity was superinduced through the conjoint but consequential operation of the liquor and the brain disorder. And the defendant was entitled to have this theory clearly recognized in the charge.

I think the court should be advised to set aside the conviction and order a new trial.

CAMPBELL, J. concurred.

COOLEY, J. The record in this case is very confused, and I am not certain that we understand the Recorder's charge as printed in it as it was understood by the Recorder himself and the jury. But if, as the record seems to say, he instructed the jury that the plaintiff in error could be guilty of larceny in taking the property of another when he was so insane as not to know what he was about, he was clearly in error. Larceny implies a taking with felonious intent; and where that intent is impossible the crime is impossible.

The other Justices concurred.