PEOPLE v JACKSON

OPINION OF THE COURT

1. TRIAL—DISCRETION—PRIOR CONVICTIONS—APPEAL AND ERROR.

A trial judge may in the exercise of discretion exclude reference to a prior conviction record, and it is error to fail to recognize that he has such discretion and, therefore, to fail or to refuse to exercise it.

2. EVIDENCE—RULES OF EVIDENCE—SUPREME COURT.

It is the duty of the Michigan Supreme Court to make the ultimate decision on whether to adopt, amend or retain a rule of evidence.

3. CRIMINAL LAW—DEFENDANT TESTIFYING—PRIOR CONVICTIONS—
   STATUTES—CREDIBILITY—IMPEACHMENT—DISCRETION.

In a criminal case where, at the conclusion of the people's proofs,

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 21 Am Jur 2d, Criminal Law §§ 473, 481, 585.

[2, 17, 20] 29 Am Jur 2d, Evidence § 61.

[4–7, 24] 21 Am Jur 2d, Criminal Law §§ 222, 313, 314, 368, 369.

29 Am Jur 2d, Evidence § 371 *et seq.*

Admissibility of evidence of lineup identification as affected by allegedly suggestive lineup procedures. 39 ALR3d 487.

Admissibility of evidence as to extrajudicial or pretrial identification of accused. 71 ALR2d 449.

[8] 58 Am Jur 2d, New Trial §§ 52, 110.

53 Am Jur, Trial § 78.

Scope and application of rule which permits judge in criminal case to comment on weight or significance of evidence. 113 ALR 1308.

[9] 58 Am Jur 2d, New Trial § 120.

[10] 58 Am Jur, Witnesses § 611.

[11] 67 Am Jur 2d, Robbery §§ 48, 97.

[12–16, 18, 19] 58 Am Jur, Witnesses § 734 *et seq.*

[15] 29 Am Jur 2d, Evidence § 638 *et seq.*

Admissibility of inculpatory statements made in presence of accused and not denied or contradicted by him. 115 ALR 1510.

[21, 22] 58 Am Jur, Witnesses § 750.

Right to cross-examine accused as to previous prosecution for or conviction of crime as affecting his credibility. 103 ALR 350.

[23] 58 Am Jur, Witnesses § 862.

defendant's lawyer asked the judge to bar the use of his conviction record should he take the stand and testify in his own behalf and the judge responded that under a statute, providing that no person shall be disqualified as a witness by reason of his interest or his having been convicted of any crime but his "interest or conviction may be shown for the purpose of affecting his credibility", he had no choice but to allow the use of such evidence for impeachment purposes, the judge, thus, did not recognize that he enjoyed a discretion to exclude such evidence and, in refusing counsel's request, did not exercise his discretion to allow or disallow the use of such evidence (MCLA 600.2159).

4. CRIMINAL LAW—ATTORNEY AND CLIENT—IDENTIFICATION—PHOTO-
   GRAPHS—LINEUP.

   Both before and after commencement of the judicial phase of a prosecution a suspect is entitled to be represented by counsel at a corporeal identification or a photographic identification unless the circumstances justify the conduct of an identification procedure before the suspect can be given an opportunity to request and obtain counsel and except in exigent circumstances, photographs of a suspect known to be in custody or who can readily be produced for a lineup may not be displayed to witnesses.

5. CRIMINAL LAW—EVIDENCE—IDENTIFICATION—LINEUP—PHOTO-
   GRAPHS.

   Generally the best evidence of whether an eyewitness can identify a suspect is his response at a fairly conducted lineup unaffected by an earlier showing of photographs of the suspect.

6. CRIMINAL LAW—IDENTIFICATION—PHOTOGRAPHS—EVIDENCE.

   The principles developed in and following the announcement of *United States v Wade,* 388 US 218 (1967), as to corporeal identifications, and *People v Anderson,* 389 Mich 155 (1973), as to photographic showings, shall govern the receipt in evidence of identification testimony where the witness has viewed or seen photographs of the suspect without regard to when the judicial phase of the prosecution is commenced.

7. CRIMINAL LAW—COURTS—DECISIONS—RETROACTIVE APPLICATION—
   WAYNE COUNTY—IDENTIFICATION—PHOTOGRAPHS—ATTORNEY
   AND CLIENT.

   At least as to appeals from Wayne County, *People v Anderson,* 389 Mich 155 (1973), ought to be retroactive to at least June 11, 1969, the date of the submission of a case to the Michigan

Court of Appeals in which the Wayne County prosecutor conceded that the exhibition-of-photographs stage is as critical as the lineup stage; therefore, a defendant who was arrested on July 1, 1970, and was tried in Recorder's Court of the City of Detroit, is entitled to the benefit of the rule stated in *Anderson* that, subject to certain exceptions, identification by photograph should not be used where the accused is in custody and where there is a legitimate reason to use photographs for identification of an in-custody accused, he has the right to counsel as much as he would for corporeal identification procedures.

8. CRIMINAL LAW—NEW TRIAL—JUDGES—RECORDER'S COURT—IDENTIFICATION—HEARING—PHOTOGRAPHS—LINEUP.

The appearance of justice will be better served if another judge of the multi-judge recorder's court presides at a new trial where the judge who presided at the first trial expressed his conclusion that defendant was guilty; before the new trial there shall be another hearing before another judge for the purpose of determining whether a witness's identification of the defendant has a source independent of the photographic and lineup identifications.

9. CRIMINAL LAW—RES GESTAE WITNESSES—NEW TRIAL.

There is no need to decide whether it was error to excuse two indorsed res gestae witnesses where a new trial is granted; at the new trial it will again be the prosecutor's obligation to attempt to produce them and the circumstances then are likely to be different than the circumstances as they were at the time of the first trial.

10. CRIMINAL LAW—RES GESTAE WITNESSES—CUMULATIVE TESTIMONY—HEARSAY—CROSS-EXAMINATION.

Statement of a police officer that the testimony of one of two indorsed res gestae witnesses was cumulative ought not to have been accepted in lieu of production of the witness; such a statement generally is merely repetitive of what an investigative report indicates the witness told an investigating officer; acceptance of such multiple hearsay is inconsistent with the defense right to cross-examine the witness.

11. ROBBERY—UNLAWFUL POSSESSION OF A CREDIT CARD—ATTEMPTED ROBBERY—ASSAULT WITH INTENT TO ROB—CONSTITUTIONAL LAW—DOUBLE JEOPARDY.

Although an attempted unlawful possession of a credit card charge grew out of an assault with intent to rob, in the sense that the credit card was taken from a vending machine opera-

tor, the assault with intent to rob and the attempted possession of stolen property offense were separate transactions; the Double Jeopardy Clause does not license subsequent offenses growing out of a theft or excuse the theft upon trial for one or another offense (MCLA 750.89).

CONCURRING OPINION

T. M. KAVANAGH, C. J., and SWAINSON, J.

12. CRIMINAL LAW—DEFENDANT TESTIFYING—PRIOR CONVICTIONS—IMPEACHMENT—CREDIBILITY.

*The interest of justice and the efficient administration of Michigan's judicial system would best be served by declaring prior convictions inadmissible for the purpose of impeaching the credibility of a criminal defendant.*

13. CRIMINAL LAW—DEFENDANT TESTIFYING—PRIOR CONVICTIONS—WITNESSES—IMPEACHMENT—CREDIBILITY—STATUTES.

*Often, when the prospective witness is a criminal defendant with a prior record, there is no real distinction between the common-law prohibition from testifying which rendered any convicted person incompetent to testify and Michigan's present rule of allowing the introduction of a witness' criminal record to impeach his credibility; because, rather than expose his prior record to the trier of fact the defendant must forego his right to testify in his own behalf (MCLA 600.2159).*

14. CRIMINAL LAW—DEFENDANT TESTIFYING—IMPEACHMENT—PRIOR CONVICTIONS—SUPREME COURT—ADMINISTRATION OF JUSTICE—PREJUDICE—EVIDENCE.

*The Michigan Supreme Court under its duty to supervise the administration of justice in the State of Michigan would promote fairness and uniformity by setting forth a clear rule prohibiting impeachment of a criminal defendant by his prior convictions rather than leaving the decision to be made in each case at the trial court level; it is undeniable at this time that the prejudice resulting from allowing impeachment of a defendant by prior conviction evidence clearly outweighs whatever small probative value might result from the practice.*

15. CRIMINAL LAW—DEFENDANT TESTIFYING—IMPEACHMENT—PRIOR CONVICTIONS—APPEAL AND ERROR—RIGHT TO SILENCE—SUPREME COURT—FAIR TRIAL—EVIDENCE—JURY.

*A rule barring the impeachment of defendants through the use of prior convictions, in addition to increasing fairness and the full scope of fact-finding at the trial court level, will aid appellate*

review; a defendant will, of course, retain his right to remain silent at trial without any adverse inference being drawn from the exercise of that right, however, in reviewing a trial the Michigan Supreme Court will no longer be forced to presume that a defendant did not testify out of fear of exposing his past record; similarly, appellate courts will be in a better position to determine if a defendant has received a fair trial if they can review the full scope of the evidence and are able to assume that the jury did not use his prior record as a basis for conviction.

16. CRIMINAL LAW—DEFENDANT TESTIFYING—PRIOR CONVICTIONS—IM-PEACHMENT— CREDIBILITY—EVIDENCE—STATUTES—INTERPRETA-TION—WITNESSES—APPEAL AND ERROR—PREJUDICE.

A decisional rule barring the impeachment of the credibility of a criminal defendant through the use of his prior convictions in all cases where the defendant does not introduce evidence to affirmatively support his credibility would be consistent with both the words and spirit of the statute providing that "[n]o person shall be excluded from giving evidence on any matter, civil or criminal, by reason of crime or for any interest of such person in the matter, suit, or proceeding in question, or in the event of such matter, suit or proceeding, in which such testimony may be offered, or by reason of marital or other relationship to any party thereto; but such interest, relationship, or conviction of crime, may be shown for the purpose of drawing in question the credibility of such witness, except as is hereinafter provided"; as an appellate court the Michigan Supreme Court does not interpret laws in a vacuum, it interprets them in light of its increasing factual knowledge and the evolving standards of justice, and since it knows more now than was known in 1861, when that statute was first enacted, concerning the true result of allowing impeachment by the use of prior convictions, it is reasonable that in the interests of justice the Michigan Supreme Court limit this permissive statute to the extent necessary to avoid prejudice at criminal trials (1861 PA 125; MCLA 600.2158).

CONCURRING OPINION

T. G. KAVANAGH and LEVIN, JJ.

17. WITNESSES—CONVICTION RECORD—PRIOR CONVICTIONS—IMPEACH-MENT—CREDIBILITY—COURT RULES.

A witness' past conviction record should not be admissible for the purposes of impeaching his credibility; however, that change

*should be effected by promulgation of a court rule which would afford the Bench and Bar an opportunity to accommodate to this prospective change in procedure.*

### Concurring Opinion

### Williams, J.

See headnotes 1–11.

18. Witnesses—Conviction Record—Perjury—Criminal Law—Prior Convictions—Impeachment—Credibility.

*Except for conviction of perjury or some like crime there is neither logic nor warrant to introduce a defendant's or a witness's past conviction record for the purpose of impeaching his credibility, whatever other reason there may be for such admission.*

### Dissenting Opinion

### M. S. Coleman, J.

19. Criminal Law—Defendant Testifying—Prior Convictions—Statutes—Impeachment—Discretion.

*Error was not committed when the trial judge declined to exclude totally any impeachment inquiry which referred to A's prior conviction record because the prosecutor had a statutory right to so impeach A; but the trial judge does have the discretion to limit the testimony (MCLA 600.2159).*

20. Criminal Law—Statutes—Witnesses—Prior Convictions—Credibility—Court Rules.

*Statute, providing that "[n]o person shall be disqualified as a witness in any criminal case or proceedings * * * by reason of his having been convicted of any crime; but such * * * conviction may be shown for the purpose of affecting his credibility", remains the sole expression of state policy; there is no court rule nor judicial decision to the contrary as an expression of the Michigan Supreme Court's policy (MCLA 600.2195).*

21. Criminal Law—Discretion—Defendant Testifying—Cross-Examination—Prior Convictions—Credibility.

*The trial judge's discretion should prevent a cross-examination from exceeding permissible limits where a prosecutor, during cross-examination, offers defendant's prior convictions as evidence bearing on his credibility.*

22. CRIMINAL LAW—DEFENDANT TESTIFYING—CROSS-EXAMINATION—
    PRIOR CONVICTIONS—MISCARRIAGE OF JUSTICE.

    *Trial judge did not err in concluding that he could not totally
    prohibit cross-examination of defendant as to prior convictions;
    however, such an examination should be carefully circum-
    scribed to insure that it does not produce a miscarriage of
    justice.*

23. WITNESSES—CREDIBILITY—TRIER OF FACT.

    *An important function of the trier of fact is to evaluate the
    credibility of witnesses, weighing the testimony elicited from
    each against the testimony of others.*

24. CRIMINAL LAW—CONSTITUTIONAL LAW—SIXTH AMENDMENT—AD-
    VERSARY CRIMINAL PROCEEDINGS—PHOTOGRAPHS—IDENTIFICA-
    TION—ATTORNEY AND CLIENT.

    *The decisions of the United States Supreme Court that there is
    no constitutional right to counsel at events preceding the
    institution of adversary criminal proceedings and that there is
    no Sixth Amendment right to counsel at identification photo-
    graphic displays containing an individual's picture promote
    efficient criminal investigation while preserving the rights of
    all citizens (US Const, Am VI).*

Appeal from Court of Appeals, Division 1, J. W.
Fitzgerald, P. J., and McGregor and O'Hara, JJ.,
remanding Recorder's Court of Detroit, George W.
Crockett, Jr., J. Submitted November 8, 1973. (No.
9 November Term 1973, Docket No. 54,539.) De-
cided April 16, 1974.

James Jackson was convicted of assault with
intent to rob being armed. Defendant appealed to
the Court of Appeals. Remanded. Defendant ap-
peals. Reversed and remanded for a new trial.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Dominick R. Carnovale,*
Chief, Appellate Department, and *Gerard A.
Poehlman,* Assistant Prosecuting Attorney, for the
people.

*State Appellate Defender Office* (by *David A. Goldstein),* for defendant on appeal.

LEVIN, J. James Jackson was convicted following a bench trial of the charged offense, assault with intent to rob being armed. MCLA 750.89; MSA 28.284.

Three hours after an attempted robbery of a bar Jackson was arrested when he sought to use a credit card stolen from a vending machine collector during the course of the attempt to rob the bar.

Jackson pled guilty to the offense of attempted unlawful possession of a credit card and was sentenced.

Jackson's bench trial on the assault with intent to rob charge commenced a month later before the same judge who had accepted his plea of guilty and sentenced him on the credit card charge.

## I

The dominant issue at the trial was identification. Barmaid-proprietress Petrenas identified Jackson as the culprit. Five other res gestae witnesses, including the vending machine collector, were unable to make an identification. Petrenas had previously identified Jackson at two photographic showings and at a lineup.[1] These identification procedures occurred while Jackson was in jail on the credit card charge but before his "arrest" on the assault with intent to rob charge. The police and prosecutor were unable to produce any records pertaining to the photographic and lineup identifications, and it is unclear whether Jackson

---

[1] Petrenas had initially described the robber to police as having a "process" hair style. Yet she selected a picture of Jackson in which he had a "natural" style.

was represented by counsel during these identification procedures.

The Court of Appeals rejected all assignments of error except those relating to the identification procedures and remanded to the trial court for a determination whether Petrenas's in-court identification was of independent origin.

On remand, the same judge who had presided at the trial and at the earlier guilty-plea proceeding held an evidentiary hearing and concluded that Petrenas's identification had an independent source.

Jackson contends that

(1) the judge erred in ruling that the prosecutor had an absolute right to impeach his credibility by the introduction of prior convictions, and in refusing to exercise his discretion in deciding whether to allow such impeachment in this case;

(2) Petrenas's in-court identification testimony and the testimony pertaining to her pre-trial identifications should have been excluded;

(3) the judge should not have sat as trier of fact at the assault with intent to rob trial because he had accepted a plea of guilty to the charge of attempted unlawful possession of a credit card and had presumably read a presentence report before sentencing Jackson on that charge;

(4) special findings of fact are required in judge-tried criminal cases, and the findings filed by the judge in this case were inadequate;

(5) the judge erred in excusing the production of certain indorsed res gestae witnesses;

(6) the prosecutor impermissibly introduced evidence of other crimes;

(7) the judge had a predisposition to find Jackson guilty;

(8) Jackson was placed twice in jeopardy when,

after he had been convicted for attempted unlawful possession of a credit card, he was prosecuted for assault with intent to rob being armed.

We reverse and remand for a new trial because the trial judge did err in failing to recognize that, in the exercise of discretion, he might have refused to allow the impeachment of Jackson by reference to his prior conviction record. We also conclude that before a new trial the question whether Petrenas's claimed ability to identify Jackson has an independent source should again be explored before a judge other than the one who sat at the trial.

## II

The statute provides that no person shall be disqualified as a witness by reason of his interest or his having been convicted of any crime but his "interest or conviction *may* be shown for the purpose of affecting his credibility." (Emphasis supplied.)[2]

In *Luck v United States*, 121 US App DC 151, 156; 348 F2d 763, 768 (1965), the United States Court of Appeals for the District of Columbia Circuit held, under a statute with fundamentally the same language as the Michigan statute, that a trial judge may, in the exercise of discretion, exclude evidence of prior crimes:

"It [the statute] says, in effect, that the conviction

---

[2] MCLA 600.2159; MSA 27A.2159; originally enacted as 1881 PA 245.

Similarly, *see* MCLA 600.2158; MSA 27A.2158; originally enacted as 1861 PA 125:

"No person shall be excluded from giving evidence on any matter, civil or criminal, by reason of crime or for any interest of such person * * * ; but such interest, * * * or conviction of crime, *may* be shown for the purpose of drawing in question the credibility of such witness, except as is hereinafter provided." (Emphasis supplied.)

'may,' as opposed to 'shall,' be admitted; and we think the choice of words in this instance is significant. The trial court is not *required* to allow impeachment by prior conviction every time a defendant takes the stand in his own defense. The statute, in our view, leaves room for the operation of a sound judicial discretion to play upon the circumstances as they unfold in a particular case. There may well be cases where the trial judge might think that the cause of truth would be helped more by letting the jury hear the defendant's story than by the defendant's foregoing that opportunity because of the fear of prejudice founded upon a prior conviction. There may well be other cases where the trial judge believes the prejudicial effect of impeachment far outweighs the probative relevance of the prior conviction to the issue of credibility. This last is, of course, a standard which trial judges apply every day in other contexts; and we think it has both utility and applicability in this field." (Emphasis by the Court.)

Subsequently, in *Gordon v United States,* 127 US App DC 343; 383 F2d 936 (1967), Chief Justice, then Judge, Burger suggested guidelines for the exercise of this trial judge discretion. Among the factors to be considered are the nature of the prior offense, whether it is for substantially the same conduct for which the accused is on trial, and the effect on the decisional process if the accused does not testify from fear of impeachment by prior convictions.[3]

---

[3] The United States Courts of Appeals for the Second, Fourth and Tenth Circuits have said that the question rests in trial judge discretion. *United States v Palumbo,* 401 F2d 270, 273 (CA 2, 1968); *United States v Hildreth,* 387 F2d 328, 329 (CA 4, 1967); *United States v Miller,* 478 F2d 768, 769 (CA 4, 1973); *United States v Bartello,* 432 F2d 1030, 1033 (CA 10, 1970).

The First and Third Circuits appear to have adopted the same rule *(United States v Johnson,* 412 F2d 753, 756 [CA 1, 1969]; *United States v Greenberg,* 419 F2d 808, 809 [CA 3, 1969]), and the last expression from the Seventh Circuit is in accord. *United States v DiVarco,* 484 F2d 670, 677 (CA 7, 1973).

The Eighth Circuit has rejected this approach. *United States v Scarpellino,* 431 F2d 475, 479 (CA 8, 1970).

The Fifth Circuit may have rejected the discretionary approach.

The highest courts of California, Pennsylvania, Illinois, Wisconsin, Connecticut, Alaska, Kentucky and New Mexico have also adopted the view that the question rests in the trial judge's discretion, the California and Pennsylvania Courts expressly adopting the factor-balancing approach of the *Luck-Gordon* opinions.[4]  Mr. Justice Schaefer,

*Bendelow v United States,* 418 F2d 42 (CA 5, 1969), *but see United States v Vigo,* 435 F2d 1347, 1351 (CA 5, 1970); *United States v Bedgood,* 453 F2d 988 (CA 5, 1972).

There are decisions of the Ninth Circuit accepting *(United States v Allison,* 414 F2d 407, 411 [CA 9, 1969]) and rejecting this approach *(Shorter v United States,* 412 F2d 428, 430 [CA 9, 1969]).

[4] *People v Beagle,* 6 Cal 3d 441; 99 Cal Rptr 313; 492 P2d 1 (1972); *Commonwealth v Bighum,* 452 Pa 554; 307 A2d 255 (1973); *People v Montgomery,* 47 Ill 2d 510; 268 NE2d 695 (1971); *State v Driscoll,* 53 Wis 2d 699; 193 NW2d 851 (1972); *State v Marquez,* 160 Conn 47; 273 A2d 689 (1970); *Spaulding v State,* 481 P2d 389 (Alas, 1971); *Bowie v State,* 494 P2d 800, 801 (Alas, 1972); *Cotton v Commonwealth,* 454 SW2d 698 (Ky, 1970); *State v Coca,* 80 NM 95; 451 P2d 999 (Ct App, 1969); *State v Victorian,* 84 NM 491; 505 P2d 436 (1973).

The Supreme Judicial Court of Maine has indicated that it is ready to adopt this view when the question is squarely presented. *See State v Toppi,* 275 A2d 805, 810 (Me, 1971).

The Pennsylvania Court appears to have gone further than most, stating:

"Since the avowed purpose of using prior convictions in rebuttal is to cast doubt upon the defendant's veracity generally as a witness, it is important to limit the convictions so used to crimes involving dishonesty or false statement. 'Both Model Code of Evidence Rule 106(1)(b) and Uniform Rule of Evidence 21 make inadmissible evidence of the conviction of a crime "not involving dishonesty or false statement." *Accord,* McCormick, Evidence § 43 at 91. The Comment to the Uniform Rule states the Rule's aim as preventing the "smearing rather than discrediting" of the witness.' *McIntosh v Pittsburgh Railways Company,* 432 Pa 123, 125, 246 A2d 467, 468 (1968). *Cf.* Fed.R.Ev. 609. Convictions for crimes not in this category have no probative value in this regard." *Commonwealth v Bighum,* 452 Pa 554, 566.

Similarly, *see Cotton v Commonwealth, supra.*

In so holding, the California Court acknowledged:

"The *Luck* decision no longer states the rule in that jurisdiction. A different result was reached in *Taylor v United States,* [280 A2d 79] (D. C. Cir. Aug. 6, 1971) 9 Crim L Rep. 2450 because 14 District of Columbia Code section 305, had been amended to provide that evidence of any prior felony conviction 'shall be admitted if offered' for impeachment. This subsequent development is based on statutory change and not the underlying rationale to which we still subscribe." *People v Beagle,* 6 Cal 3d 441, 452, n 1.

speaking for a unanimous Illinois Supreme Court, declared:

"The question is inherently judicial, and we believe that view is correct which places the discretion as to the admissibility of this kind of evidence in the judge rather than in the prosecutor." *People v Montgomery,* 47 Ill 2d 510, 515; 268 NE2d 695, 698 (1971).[5]

In *People v Cummins,* 47 Mich 334, 336; 11 NW 184 (1882), this Court, in its first statement after the legislative elimination of the common-law disability of a defendant in a criminal case to testify in his own behalf, declared "it was quite within the *discretionary authority* of the trial judge" (emphasis supplied) to permit a defendant who had elected to testify to be cross-examined as to his prior conviction record.[6]

In *People v Farrar,* 36 Mich App 294, 300–306; 193 NW2d 363 (1971), a panel of the Court of Appeals adopted the *Luck* construction, and held it was error for a trial judge to fail to recognize that he may, in the exercise of discretion, refuse to allow reference to a defendant's prior conviction

---

In this connection see fn 8 and accompanying text.

The Connecticut Court so concluded, not as a matter of statutory construction, but in application of the general rule of evidence that a judge may in the exercise of discretion exclude relevant evidence if he concludes that its probative value is outweighed by its "prejudicial" effect. *State v Marquez,* 160 Conn 47, 52. *See, generally,* McCormick, Evidence (2d ed), § 185, pp 438–441; 1 Jones on Evidence (6th ed), § 4.6, p 392.

[5] Other courts have announced their adherence to the view that a prosecutor has the right to have prior conviction evidence introduced. *State v Hawthorne,* 49 NJ 130; 228 A2d 682 (1967); *Commonwealth v West,* 357 Mass 245; 258 NE2d 22 (1970); *Bustillos v State,* 464 SW2d 118, 124 (Tex Crim App, 1971); *State v West,* 285 Minn 188; 173 NW2d 468 (1969); *but see State v Stewart,* — Minn —; 209 NW2d 913 (1973); *People v Yeager,* — Colo —; 513 P2d 1057 (1973); *State v Busby,* 486 SW2d 501 (Mo, 1972).

[6] The common-law disabilities were removed for defendants in criminal cases by 1881 PA 245. *People v Thomas,* 9 Mich 314 (1861), commenting on 1861 PA 125, sets forth the former state of the law.

record. This construction of the statute has been followed in subsequent Court of Appeals decisions.[7]

We are persuaded that a trial judge may in the exercise of discretion exclude reference to a prior conviction record, and that it is error to fail to recognize that he has such discretion and, therefore, to fail or to refuse to exercise it.

In so construing our statute we have in mind that it is the duty of this Court to make the ultimate decision on whether to adopt, amend or retain a rule of evidence.[8]

In this case, at the conclusion of the people's proofs, Jackson's lawyer asked the judge to bar the use of his conviction record should he take the stand and testify in his own behalf. The judge responded that under the statute he had no choice but to allow the use of such evidence for impeachment purposes. The judge, thus, did not recognize that he enjoyed a discretion to exclude such evidence and, in refusing counsel's request, did not exercise his discretion to allow or disallow the use of such evidence. On remand, the trial judge shall, upon request, in the exercise of his discretion, decide whether to exclude any reference to Jackson's prior conviction record.

---

[7] *People v Downs,* 45 Mich App 130, 133; 206 NW2d 241 (1973); *People v Hatfield,* 46 Mich App 149, 151; 207 NW2d 485 (1973); *People v Johnson,* 46 Mich App 212, 220; 207 NW2d 914 (1973); *People v Osteen,* 46 Mich App 409, 419; 208 NW2d 198 (1973).

[8] *See Perin v Peuler (on reh),* 373 Mich 531, 541–543; 130 NW2d 4 (1964); *Dusdal v City of Warren,* 387 Mich 354, 367; 196 NW2d 778 (1972) (per ADAMS, J; SWAINSON and WILLIAMS, JJ., concurring). *Cf. Buscaino v Rhodes,* 385 Mich 474, 479; 189 NW2d 202 (1971); *People v Bellanca,* 386 Mich 708, 716; 194 NW2d 863 (1972). *See, also,* GCR 1963, 601–608 promulgating rules of evidence, including rule 607 superseding a rule enacted by the Legislature.

The Supreme Court of Pennsylvania appears to have adopted the *Luck* construction in the exercise of its "supervisory powers". *Commonwealth v Bighum,* 452 Pa 554, 567.

## III

In *Kirby v Illinois,* 406 US 682; 92 S Ct 1877; 32 L Ed 2d 411 (1972), the United States Supreme Court, with less than five justices joining in an opinion, declared that the *Wade*[9]*-Gilbert*[10] exclusionary rules, restricting the use of in-court identification following a pre-trial corporeal identification during which the accused was not represented by counsel, did not apply to identification testimony following a corporeal identification that takes place before the accused has been indicted or otherwise formally charged.

In *United States v Ash,* 413 US 300; 93 S Ct 2568; 37 L Ed 2d 619 (1973), the Supreme Court held that the Sixth Amendment does not guarantee an accused the right to counsel at photographic displays at which witnesses attempt to identify a suspect. The Court distinguished its earlier *Wade* decision, requiring counsel at corporeal identifications, on the basis that the suspect is not physically present at a photo showing. This conclusion was rested essentially on the Court's analysis limiting the Sixth Amendment right to counsel to only "trial-like confrontation" at which the accused requires the "guiding hand of counsel".

In *People v Anderson,* 389 Mich 155, 186–187; 205 NW2d 461 (1973), this Court, in an opinion by Mr. Justice WILLIAMS, declared:

"1. Subject to certain exceptions, identification by photograph should not be used where the accused is in custody.

"2. Where there is a legitimate reason to use photographs for identification of an in-custody accused, he

---

[9] *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).

[10] *Gilbert v California,* 388 US 263; 87 S Ct 1951; 18 L Ed 2d 1178 (1967).

has the right to counsel as much as he would for corporeal identification procedures."

The *Anderson* opinion was filed after the *Kirby* decision was announced but before *Ash* was decided.

The quoted *Anderson* rules were enunciated after an extensive analysis of the competing considerations and represent the conclusion of this Court, independent of any Federal constitutional mandate, that, both before and after commencement of the judicial phase of a prosecution,[11] a suspect is entitled to be represented by counsel at a corporeal identification or a photographic identification unless the circumstances justify the conduct of an identification procedure before the suspect can be given an opportunity to request and obtain counsel[12] and that, except in exigent circumstances, photographs of a suspect known to be in custody or who can readily be produced for a lineup[13] may not be displayed to witnesses. After due consideration of the *Kirby* and *Ash* opinions we adhere to this view because we are of the opinion that generally the best evidence of whether an eyewitness can identify a suspect is his response at a fairly conducted lineup unaffected by an earlier showing of photographs of the suspect.

Accordingly, in the exercise of our constitutional power to establish rules of evidence applicable to judicial proceedings in Michigan courts[14] and to preserve best evidence eyewitness testimony from

---

[11] Filing of a complaint/ issuance of an arrest warrant/ preliminary examination/ filing of an information or indictment.

[12] *See, e.g. Simmons v United States,* 390 US 377, 88 S Ct 967; 19 L Ed 2d 1247 (1968); *Stovall v Denno,* 388 US 293; 87 S Ct 1967; 18 L Ed 2d 1199 (1967); *People v Adams,* 19 Mich App 131; 172 NW2d 547 (1969).

[13] *See, e.g. People v Cotton,* 38 Mich App 763; 197 NW2d 90 (1972).

[14] *See* fn 8 and accompanying text. *See, also, Chandler v State,* 501 P2d 512, 520 (Okla Ct Crim App, 1972).

unnecessary alteration by unfair identification procedures, the principles developed in and following the announcement of *Wade,* as to corporeal identifications,[15] and *Anderson,* as to photo showings,[16] shall govern the receipt in evidence of identification testimony where the witness has viewed or seen photographs of the suspect without regard to when the judicial phase of the prosecution is commenced.

We have considered whether the rules spelled out in *Anderson,* decided on March 27, 1973, should be made retroactive. Jackson was arrested on the credit card charge on July 1, 1970 and on the assault with intent to rob charge on August 5, 1970.

The following appears in the opinion in *People v Adams,* 19 Mich App 131, 133; 172 NW2d 547 (1969): "Defendant's appellate counsel argues and the [Wayne County] prosecutor concedes that the exhibition-of-photographs stage is as critical as the lineup stage." A footnote quotes the people's brief:

---

[15] *See People v Anderson,* 389 Mich 155, 168–169; 205 NW2d 461 (1973).

[16] *See People v Anderson, supra,* pp 186–187.

Since photographs of an accused person may not ordinarily "be displayed to witnesses" if he is "known to be in custody" or "can readily be produced for a lineup" and, in general, only such an accused person is entitled to "an opportunity to request and obtain counsel," most *proper* photographic identifications—where the suspect is *not* known or he *cannot* readily be produced for a lineup—will continue to be conducted without the presence of counsel.

The identification of an accused person known to be in custody or who can readily be produced for a lineup is to be attempted, without the showing of photographs, at a corporeal lineup at which he is entitled to an opportunity to request and obtain counsel.

In general, if a photographic identification of a known suspect is in fact conducted the likelihood is that both rules (the rule against holding the photographic identification and the rule against holding it without counsel) will have been violated. A violation of either or both rules will entitle a defendant to a hearing to determine whether the witness' subsequent corporeal identification had a source independent of the photographic identification.

"The appellee agrees that the pretrial photo-
graphic identification stage is as critical as the
lineup stage. The appellee is also in agreement
with the view that, where the defendant is in
custody, identification by means of a police lineup
should be attempted. *People v Rowell* (1969), 14
Mich App 190 [165 NW2d 423]."

It, therefore, appears that at least as to appeals
from Wayne County, *Anderson* ought to be retro-
active to at least June 11, 1969, the date on which
the *Adams* case was submitted. Jackson is, there-
fore, entitled to the benefit of the rule stated in
*Anderson.* We reserve the question whether *An-
derson* should have greater retroactivity as we
think that other considerations may be relevant in
appeals from less populous counties and there is
no need, decisionally, to reach that question.

## IV

It is unclear whether the judge who presided at
Jackson's trial received any information during
the earlier credit card guilty-plea proceedings
which would not have been admissible at the
assault with intent to rob trial.[17] In any event,

---

[17] In *People v Ramsey,* 385 Mich 221, 225–226; 187 NW2d 887
(1971), this Court held it was reversible error for a trial judge sitting
as trier of fact to refer to the transcript of preliminary examination
testimony except under the exceptions provided by statute because
jurors would not be aware of this testimony except under the provi-
sions of the statute and a judge sitting as trier of fact can assume no
greater prerogatives. In *People v Frazier Walker,* 385 Mich 596; 189
NW2d 41 (1971), this Court adopted the opinion of the Court of
Appeals, 24 Mich App 360; 180 NW2d 193 (1970), reversing a convic-
tion where the judge in a non-jury trial had interrogated witnesses in
defendant's absence and had knowledge that he had taken a lie
detector test.

This Court has under consideration the adoption of a court rule
concerning the disqualification of a judge who has heard or received
evidence which would not be admissible at the trial. This proposed
rule has been criticized by some persons and whether and in what
form it will be adopted is unresolved.

since a new trial has been ordered and the judge who presided has already expressed his conclusion that Jackson is guilty, the appearance of justice will be better served if another judge of the multi-judge recorder's court presides at the new trial. For the same reasons, we have considerable misgivings about this judge having presided at the remand hearing ordered by the Court of Appeals. Having convicted Jackson on the strength of Petrenas's testimony, the most upright man might not be wholly objective when asked to determine whether the in-court identification had an independent origin. Accordingly, before the new trial, there shall be another hearing before another judge for the purpose of determining whether Petrenas's identification has a source independent of the photographic and lineup identifications.

## V

Turning to the remaining issues, in *People v Jackson,* 390 Mich 621, 627; 212 NW2d 918 (1973), we recently held that a trial judge sitting without a jury is required to file findings of fact in a criminal case as well as in a civil case. We have examined the trial judge's findings in this case and conclude that they are more than adequate on the only disputed factual issue, identification.

We see no need to decide whether it was error to excuse the two res gestae witnesses. At the new trial it will again be the prosecutor's obligation to attempt to produce them and the circumstances then are likely to be different than the circumstances as they were at the time of the first trial. We do observe, however, that the statement of a police officer that the testimony of one of the two witnesses was cumulative ought not to have been accepted in lieu of production of the witness. Such

a statement generally is merely repetitive of what an investigative report indicates the witness told an investigating officer; acceptance of such multiple hearsay is inconsistent with the defense right to cross-examine the witness.

If upon the new trial the judge decides to exclude reference to prior convictions, it will be especially important to avoid reference to other crimes committed by Jackson, including the attempted unlawful possession of a credit card conviction, even though he was initially arrested on that charge, except to the extent the circumstances of that crime have substantial probative value on the present charge of assault with intent to rob.

There is no support in the record for the claim that the trial judge was predisposed to convict Jackson.

Although the attempted unlawful possession of a credit card charge grew out of the assault with intent to rob charge, in the sense that the credit card was taken from the vending machine operator, the assault with intent to rob and the attempted possession of a credit card were separate transactions.[18] The Double Jeopardy Clause does not license subsequent offenses growing out of a theft or excuse the theft upon trial for one or another offense.

Reversed and remanded for a new trial and further proceedings consistent with this opinion.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, SWAINSON, and WILLIAMS, JJ., concurred with LEVIN, J.

---

[18] Jackson was arrested when he attempted to use the credit card to make a purchase three hours after the attempted robbery of the bar.

SWAINSON, J. *(concurring)*. I concur in the result
reached by Justice LEVIN but disagree with the
rule set forth in Part II. In my opinion, the inter-
est of justice and the efficient administration of
our judicial system would best be served by declar-
ing prior convictions inadmissible for the purpose
of impeaching the credibility of a criminal defend-
ant.

The practice of allowing the introduction of a
witness' criminal record to impeach his credibility
has come down to us as a modification of the
common-law rule that rendered any convicted per-
son incompetent to testify. McCormick, Law of
Evidence (2d ed), § 43, p 84. In the 19th century
this common-law rule was justly criticized as ob-
servers recognized that there was no necessary
relationship between a prior criminal conviction
and a disposition to tell the truth at trial. 37 U
Cinc L Rev 168, 169 (1968). Our Legislature dis-
played its general agreement with the critics of
the old rule by abolishing it and thereby allowing
previously convicted persons to testify. See, 1846
RS, ch 102, § 99; 1861 PA 125. The Legislature,
however, did not eliminate all aspects of the for-
mer rule. In its place was substituted a new rule
that permits opposing counsel to introduce the
witness' criminal record under the color of im-
peaching his credibility. See, 1881 PA 245, rele-
vant provisions now found in MCLA 600.2159;
MSA 27A.2159.

I think that it is now time for this Court to
recognize a fact that has been well illustrated by
commentators and confirmed by the facts in the
present case. When the prospective witness is a
criminal defendant with a prior record, there is
often no real distinction between the common-law
prohibition from testifying and our present rule.
Rather than expose his prior record to the trier of

fact the defendant must forego his right to testify in his own behalf. *State v Santiago,* 53 Hawaii 254, 258; 492 P2d 657, 660 (1971); H. Kalven and H. Zeisel, The American Jury 146 (1966); McCormick, Law of Evidence (2d ed), § 43, p 84.

If we expect the trier of facts to intelligently and impartially decide if a defendant has committed the crime for which he is standing trial, it makes no sense to permit artificial barriers to remain in the fact-finding process. A total understanding of the events in question at an adversary trial cannot logically be achieved unless the defendant is able to freely testify as to his recollection of them. Conversely, if a defendant with a record does elect to testify, we ask the jury to perform unattainable feats of "mental gymnastics" by exposing it to a defendant's record for the stated purpose of weighing his credibility and then asking the jury to totally disregard the criminal record when passing on the defendant's guilt or innocence of the present charge.[1] E. Griswold, *The Long View,* 51 ABAJ 1017, 1021 (1965); 70 Yale L J 763, 777 (1961).

I find it undeniable at this time that the prejudice resulting from allowing impeachment of a defendant by prior conviction evidence clearly outweighs whatever small probative value might result from the practice.[2] I believe that under our

---

[1] Even when properly instructed on the limited purpose for which the prior convictions may be used, the jury members undoubtedly do not erase a defendant's record from their minds when deliberating on the verdict. They likely use defendant's record to conclude that he is a "bad man" and probably guilty of the crime for which he is being tried, 70 Yale L J 763, 777 (1961), and thus use his record to lighten " ' * * * the sense of responsibility which rests upon the jury, by showing that he is not worthy of painstaking [consideration] and care.' " 37 U Cinc L Rev 168, 172 (1968).

[2] To date we have already limited the extent to which the facts contained in a defendant's prior record may be used to impeach his credibility. For example, we recently held in *People v Falkner,* 389 Mich 682; 209 NW2d 193 (1973), that inquiry could not be made into a prior arrest record or concerning charges that did not result in a

duty to supervise the administration of justice in
the State of Michigan we would promote fairness
and uniformity by setting forth a clear rule pro-
hibiting impeachment of a criminal defendant by
his prior convictions rather than leaving the deci-
sion to be made in each case at the trial court
level.

In addition to increasing fairness and the full
scope of fact-finding at the trial court level, a rule
barring the impeachment of defendants through
the use of prior convictions will aid appellate
review. A defendant will, of course, retain his
right to remain silent at trial without any adverse
inference being drawn from the exercise of that
right. However, in reviewing a trial we will no
longer be forced to presume that a defendant did
not testify out of fear of exposing his past record.
Similarly, appellate courts will be in a better
position to determine if a defendant has received a
fair trial if they can review the full scope of the
evidence and are able to assume that the jury did
not use his prior record as a basis for conviction.

A decisional rule barring the impeachment of
the credibility of a criminal defendant through the
use of his prior convictions in all cases where the
defendant does not introduce evidence to affirma-
tively support his credibility would be consistent

conviction. In *People v Rappuhn,* 390 Mich 266; 212 NW2d 205 (1973),
we found that the length and conditions of sentences served are not
within the scope of a proper cross-examination. Likewise, the Court of
Appeals has barred impeachment of a defendant through the use of
his juvenile record, *People v Warren,* 23 Mich App 20; 178 NW2d 127
(1970); *People v Smallwood,* 306 Mich 49; 10 NW2d 303 (1943), and
held in *People v Farrar,* 36 Mich App 294; 193 NW2d 363 (1971), the
decision approved by the majority in the present case, that the trial
judge must exercise his discretion to determine if impeachment by
any prior conviction should be allowed. *See also, People v Eddington,*
387 Mich 551; 198 NW2d 297 (1972). In all of these cases the Courts
have followed the rule that evidence will be excluded when the
prejudice resulting from its introduction is deemed to outweigh the
probative value of the evidence.

with both the words and spirit of MCLA 600.2158; MSA 27A.2158. As an appellate court we do not interpret laws in a vacuum. We interpret them in light of our increasing factual knowledge and the evolving standards of justice. *Cf. People v Wimberly,* 384 Mich 62, 66; 179 NW2d 623 (1970); *Harper v Virginia Board of Elections,* 383 US 663, 670; 86 S Ct 1079; 16 L Ed 2d 169 (1966). Since we know more now than was known in 1861, when that section was first enacted, concerning the true result of allowing impeachment by the use of prior convictions, it is reasonable that in the interests of justice we limit this permissive statute to the extent necessary to avoid prejudice at criminal trials.[3] *Perin v Peuler,* 373 Mich 531; 130 NW2d 4 (1964).

T. M. KAVANAGH, C. J., concurred with SWAINSON, J.

T. G. KAVANAGH, J. *(concurring).* We agree that a witness' past conviction record should not be admissible for the purpose of impeaching his credibility.

We are convinced however that the change

---

[3] When the defendant takes the witness stand the jury will continue to be suspect of his testimony and will examine it carefully even if he is not impeached by his prior convictions. Juries are aware of the pressure on a defendant to exculpate himself and the possibility that he has prepared "the best story possible". 78 Harv L Rev 426, 440 (1964). The jury's focus will, however, be directed to the facts of the case before them and not to facts unrelated to the case in which they are charged to reach a fair and impartial verdict.

The legal profession has always taken pride in its ability to bring out the facts of an event within the limitations of the trial setting. I am confident that a rule foreclosing the impeachment of a defendant in a criminal case by the use of prior convictions will not lessen that ability. After a defendant has taken the witness stand in his own behalf his testimony can be tested through a vigorous cross-examination without the necessity of resorting to impeachment by prior convictions. *State v Santiago,* 53 Hawaii 254, 259–260; 492 P2d 657, 661 (1971).

should be effected by promulgation of a court rule which would afford the Bench and Bar an opportunity to accommodate to this prospective change in procedure.

LEVIN, J., concurred with T. G. KAVANAGH, J.

WILLIAMS, J. *(concurring)*. My Brother LEVIN's opinion is the right word at the right time, and I sign it without qualification.

Looking ahead with my Brothers T. G. KAVANAGH, SWAINSON and LEVIN, I must agree that with the exception of conviction for perjury or some like crime there is neither logic nor warrant to introduce a defendant's or a witness's past conviction record for the purpose of impeaching his credibility, whatever other reason there may be for such admission.

M. S. COLEMAN, J. *(dissenting)*. Defendant is appealing his conviction for assault with intent to rob while armed. I cannot agree that this conviction is made unsound by the trial judge's declining to prohibit all cross-examination as to defendant's felony record. I cannot join the Court's application of the decision in *People v Anderson,* 389 Mich 155; 205 NW2d 461 (1973) to this case and its retroactive effect as to Wayne County. I do not share the Court's misgivings about the trial judge presiding at the remand identification hearing.

## FACTS

Because the facts are important, I add to those set forth in the majority opinion.

The robbery occurred July 1, 1970 at the Terminal Bar in Detroit. A complaint alleging assault with intent to rob was issued July 27, 1970. De-

fendant was arrested for this crime on August 5, 1970.

Defendant waived his right to trial by jury. During trial Elizabeth Petrenas, a barmaid and part owner of the bar, identified defendant. After the robbery she had selected defendant's picture when shown photographs of nine individuals. Subsequently, she also identified defendant from a lineup. Defendant's attorneys did not object to admission of this testimony.

At the close of the evidence, the court said the case "really boils down to the question of identity". The court did not believe the testimony of defendant's sole alibi witness. The court did emphasize Mrs. Petrenas' "ample opportunity to see the alleged robber". Defendant had been in the bar previously and she had talked to him. During the robbery it was defendant who went behind the bar to empty the cash register. The judge was sure Mrs. Petrenas "got a mental picture of the alleged assailant that she won't forget for a long time to come". The judge was "satisfied beyond a reasonable doubt that she was able to identify her assailant and that her assailant was, in fact, this defendant".

Defendant moved for a new trial. The judge said "there was sufficient basis for concluding that the in-court identification had an independent basis separate and apart from the exhibition of the photographs". He felt the circumstances and length of observation dispelled any fear that the identification was "tainted or colored by the fact that she was shown photographs".

In an opinion filed June 28, 1972, the Court of Appeals said:

"The crux of this matter seems to be whether or not the in-court identification of the defendant was tainted

by the lack of defendant's legal representation at the time of his previous photographic identification, made prior to formal accusation."

Despite the absence of objection, the Court remanded for a hearing "to determine whether complainant's in-court identification was of independent origin".

Hearings were held in August and September 1972. The transcript runs over 100 pages. The trial judge said when defendant first entered the bar "he asked for the latrine, which was an expression [Mrs. Petrenas] was unfamiliar with and had not heard it before and that attracted her attention". The fact that defendant left without purchasing anything also attracted her attention. Coupled with factors noted above, this led the judge to conclude "that in this case the witness did have an independent basis for her identification here in court of the defendant".

Defendant's delayed application for leave to appeal the decision of the Court of Appeals was granted by this Court April 30, 1973.

## DISCUSSION

### I

The Court has reversed defendant's conviction believing that error was committed when the judge failed "to recognize that, in the exercise of discretion, he might have refused to allow the impeachment of Jackson by reference to his prior conviction record". Error should not be predicated on this failure because the prosecutor had a statutory right to impeach defendant by reference to his prior convictions. The judge does have discretion to limit the testimony, but not to prohibit impeachment inquiry.

MCLA 600.2159; MSA 27A.2159 provides that if a witness has been convicted of a crime, such conviction "may be shown for the purpose of affecting his credibility". The common law prohibited any defendant or convicted person from testifying. The latter disability was removed by the Revised Statutes of 1846.

1861 PA 125 removed the defendant's disability:

"Nothing in this act shall be construed as giving the right to compel a defendant in criminal cases to testify but any such defendant shall be at liberty to make a statement to the court or jury and may be cross-examined upon any such statement."

1881 PA 245 introduced the predecessor of MCLA 600.2159:

"No person shall be disqualified as a witness in any criminal case or proceedings * * * by reason of his having been convicted of any crime; but such * * * conviction may be shown for the purpose of affecting his credibility."

When the defendant takes the stand, he is treated in the same manner as any other witness. To date, the statute remains the sole expression of state policy. There is no court rule to the contrary as an expression of this Court's policy. There is considerable Michigan case law supporting the contention that the prosecutor has the right, during cross-examination, to offer defendant's prior convictions as evidence bearing on his credibility. The judge's discretion should prevent such a cross-examination from exceeding permissible limits.

The defendant in *People v Eddington,* 387 Mich 551; 198 NW2d 297 (1972) had been cross-examined about other charges then pending against him. This Court felt the "trial judge should exer-

cise his discretion in such a way that a defendant is not cross-examined, under the guise of testing credibility, merely to prejudice the jury". Such questioning must be controlled and limited "so as to prevent a miscarriage of justice". The judge's discretion should control cross-examination, not prohibit it.

In *People v Di Paolo,* 366 Mich 394; 115 NW2d 78 (1962), the defendant was cross-examined as to prior convictions. The Court said there was no question that *"the people had the right to such cross-examination, if properly conducted * * ** the purpose being to assist the jury in determining the credibility of defendant as a witness in his own behalf"*. (Emphasis added.) It was the trial court's duty to insure that cross-examination was properly conducted.

The prosecution in *People v Finks,* 343 Mich 304; 72 NW2d 250 (1955) did not introduce defendant's criminal record until he had a lapse of memory on cross-examination. The Court said the *"right to show these convictions for the purpose of determining credibility is established"* by statute (emphasis added):

"In determining the weight to be given the defendant's testimony the jury had a right to know what manner of man he had been in the past. See *Van Goosen v Barlum,* 214 Mich 595 [183 NW 8 (1921)]; *People v Cummins,* 47 Mich 334 [11 NW 184 (1882)].

"In *Lunde v Detroit United Railway,* 177 Mich 374, 378 [143 NW 45 (1913)], this Court held:

" 'The extent of cross-examination for the purpose of showing the true character of the witness, so as to enable the jury to properly judge the weight to give the testimony, should be and is left to the discretion of the trial judge, and will not be reviewed unless this discretion is clearly abused.'

"There was no effort made to enlarge upon the details

of the convictions and the record was offered with credibility of the witness as the sole issue."

The Court in *People v De Camp,* 146 Mich 533; 109 NW 1047 (1906) found no error in the trial court's admitting evidence that defendant had been convicted of other crimes:

"Defendant was a witness, and this evidence was competent to affect his credibility. *Helwig v Lascowski,* 82 Mich 621 (10 L.R.A. 378 [46 NW 1033 (1890)]), and cases there cited."

In *Helwig,* the Court said:

"While it is competent on cross-examination to interrogate a witness fully as to his past life, so that the jury may know what manner of man the witness is and has been, still there must be a limit beyond which such inquiry should not go, and the trial judge must, in the exercise of a sound discretion, determine when that limit is reached. Only a clear abuse of that discretion will be reviewed on error."

Justice LEVIN cites only *People v Cummins,* 47 Mich 334; 11 NW 184 (1882) as precedent provided by this Court which found that it is "within the discretionary authority of the trial judge to permit" questions as to prior convictions. However, the Court in the same paragraph further said:

"The defendant had voluntarily offered himself to the court and jury as a general witness, and his right to testify and their duty to receive his testimony and consider it were clear and unqualified. It is evident that the course of inquiry referred to was not carried beyond reasonable bounds, and certainly it was not wrong to permit him to be requested in the mode pursued to inform the judgments of the triers as to his former life and behavior."

Acting in the aforesaid legal milieu the judge, in

my opinion, did not err in concluding that he could not totally prohibit cross-examination as to prior convictions. However, it is agreed that such an examination should be carefully circumscribed to insure that it does not produce a miscarriage of justice.

It is, however, fruitless to analyze the legal question presented in this case by referring to established precedent. This case is being used as the first step in the march to eliminate use of prior convictions to attack a defendant's credibility. This decision is being used to change a policy established by statute and precedent.

The majority opinion poses a problem of a practical nature which should have been addressed. If the judge is to use his or her discretion in deciding whether to exclude evidence of prior convictions, such convictions must be timely revealed so that the judge can make a fully informed decision.

Therefore, I would have provided that a pretrial determination be made in a hearing in which the interested parties would be present to consider this question and also to dispose of questions raised by *Loper v Beto,* 405 US 473; 92 S Ct 1014; 31 L Ed 2d 374 (1972) and *United States v Tucker,* 404 US 443; 92 S Ct 589; 30 L Ed 2d 592 (1972) as to use of convictions unconstitutionally obtained.

## *THE FUTURE*

It is important to look ahead. If there are obstacles in the path of truth, of course they must be removed or rendered harmless. Therefore, this "first step", this departure from history and Michigan statutory and judicial precedent, must be viewed with appropriate caution and its goal studied in depth.

The majority opinion considered together with the concurring opinions renders the route of this Court obvious. Either by court rule or precedential opinion, the Court would prohibit impeachment of the credibility of a criminal defendant by any reference to prior convictions. The credibility of all other witnesses may be impeached by evidence of prior convictions. Although all of us wish to arrive at the truth, I have deep reservations as to whether truth will be the product of our labors.

An important function of the trier of fact is to evaluate the credibility of witnesses, weighing the testimony elicited from each against the testimony of others. To date, the trier of fact has been assisted in this evaluation by appropriate evidence demonstrating what manner of person each witness may be. It appears that the trier of fact may be required to operate in a vacuum so far as the defendant is concerned, but that another set of rules would apply to others. Indeed, the victim or the complaining witness may end up in all appearances as the accused.

On the face of the instant probability, the scales of justice would be improperly balanced.

There is a large if sometimes overlooked difference between securing so far as is possible a fair trial leading to the right result (the truth of the matter) and securing to defendants the benefit of anything and everything which may give them a chance for acquittal. We appear to be headed towards the latter result.

II

The Court has affirmed and applied the decision of *People v Anderson, supra,* to these facts. The Court acknowledges that the *Anderson* rules are

not mandated by constitutional guarantees. The Court assumes unfairness and feels compelled to readopt the rules "to preserve best evidence eyewitness testimony from unnecessary alteration by unfair identification procedures". I believe this objective can be met by less restrictive procedures which will preserve the constitutional rights of citizens and promote efficient law enforcement. The United States Supreme Court has afforded strong and recent precedent which we ignore.

In *Kirby v Illinois,* 406 US 682; 92 S Ct 1877; 32 L Ed 2d 411 (1972), the Supreme Court declined

"to extend the *Wade-Gilbert* per se exclusionary rule to identification testimony based upon a police station showup that took place *before* the defendant had been indicted or otherwise formally charged with any criminal offense."

The Court refused "to import into a routine police investigation an absolute constitutional guarantee historically and rationally applicable only after the onset of formal prosecutorial proceedings". Noting *Stovall v Denno,* 388 US 293; 87 S Ct 1967; 18 L Ed 2d 1199 (1967) the Court said:

"When a person has not been formally charged with a criminal offense, *Stovall* strikes the appropriate constitutional balance between the right of a suspect to be protected from prejudicial procedures and the interest of society in the prompt and purposeful investigation of an unsolved crime."

In the instant case, as in *Kirby,* the formal proceedings on the charge complained of had not been instituted. Defendant was only a suspect as to the assault. Unlike *Kirby,* where there was a station house one-on-one confrontation, defendant in our case was identified from among a group of

photographs and out of a lineup as well as in court.

After the *Anderson* opinion the United States Supreme Court in *United States v Ash,* 413 US 300; 93 S Ct 2568; 37 L Ed 2d 619 (1973) discussed the question of

"whether the Sixth Amendment grants an accused the right to have counsel present whenever the government conducts a post-indictment photographic display, containing a picture of the accused, for the purpose of allowing a witness to attempt an identification of the offender."

Nine of ten circuits answered in the negative. The majority of state courts answered in the negative.

In *Ash,* the Court concluded:

"*A substantial departure from the historical test would be necessary if the Sixth Amendment were interpreted to give Ash a right to counsel at the photographic identification in this case.* Since the accused himself is not present at the time of the photographic display, and asserts no right to be present * * * no possibility arises that the accused might be misled by his lack of familiarity with the law or overpowered by this professional adversary. Similarly, the counsel guarantee would not be used to produce equality in a trial-like adversary confrontation." (Emphasis added.)

The Court held "that the Sixth Amendment does not grant the right to counsel at photographic displays conducted by the government for the purpose of allowing a witness to attempt an identification of the offender".

*Kirby* holds that there is no right to counsel at events preceding the institution of adversary criminal proceedings. (See *Ash,* p 303, footnote 3.) *Ash* holds that there is no right to counsel at photographic displays used for identification purposes.

The proceedings in the instant case fall within the rules of *Kirby* and *Ash.* I believe adoption of those rules would promote efficient criminal investigation while preserving the rights of all citizens. I do not believe *Anderson* as effectively serves those ends.

## *RETROACTIVITY*

Even if I could subscribe to the result in *Anderson,* I would not adopt the Court's application of that decision. *Anderson* has been made retroactive to June 11, 1969 but only as to appeals from Wayne County. As sole authority for this unique conclusion, the Court makes much of a one-paragraph excerpt from a prosecutor's brief which was quoted in a footnote in a decision of the Court of Appeals. (The Court fails to note that the defendant's conviction in that case was affirmed by the Court of Appeals.)

Upon such a gossamer thread of legal authority is hung the weighty determination that *Anderson* has a limited retroactive effect applicable to appeals from one county of this state. The Court has, without a substantial basis, created two classes of criminal defendants. The Court has cut across guarantees of equal protection of the laws.

## III

The Court has expressed "misgivings" about the trial judge presiding at the hearing ordered by the Court of Appeals. The Court believes "even an upright man could not be wholly objective" in these circumstances.

The conclusion of the Court is unsupported by the record. It is not even raised by defendant in his ten allegations of error. There is no claim of

prejudice or bias. There is no claim that due process was denied. There is no claim that the hearing was truncated or unfair.

The Court has on its own raised this issue. The remarks are inappropriate, in my opinion. The 100 page record is clear on its face. I believe that this Court does not reflect "the appearance of justice" in faulting the obviously painstaking judge.

Defendant's conviction should be affirmed.

J. W. FITZGERALD, J., did not sit in this case.