PEOPLE v WOODLE

Docket No. 53795. Submitted July 14, 1982, at Detroit—Decided November 17, 1982. Leave to appeal denied, 417 Mich __.

Defendant, Johnny R. Woodle, was convicted of felony murder in the Wayne Circuit Court, Harold Hood, J. The underlying felony was armed robbery. The chief witness against defendant was an accomplice to the robbery and he gave evidence indicating that the defendant had committed the murder alone. The defense theory was that the witness had committed the murder. The court limited defendant's cross-examination of the witness concerning a prior homicide for which the witness had been convicted of manslaughter. The suppressed evidence concerning the prior homicide was that there had been homosexual involvement. In this case there was some evidence arguably supporting an inference of homosexual involvement between the witness and the victim. The court also ruled that, if defendant testified, he could be impeached by evidence of three prior armed robbery convictions. Defendant did not testify. Defendant appealed. *Held:*

1. Defendant has a constitutional right to confront and cross-examine prosecution witnesses. The evidence suppressed was relevant to the witness's credibility and the reasons for his testimony in light of the defense raised. Suppression of that evidence deprived defendant of his right to effectively cross-examine the witness.

2. Impeachment of a defendant on trial for felony murder by evidence of more than one previous armed robbery conviction is improper where the felony underlying the felony-murder charge is armed robbery.

Reversed and remanded.

Homicide — Impeachment — Prior Bad Acts — Felony Murder.

Impeachment of a defendant on trial for felony murder by evidence of more than one previous armed robbery conviction is

References for Points in Headnotes
[1] 40 Am Jur 2d, Homicide § 540.
  81 Am Jur 2d, Witnesses §§ 569, 582.

improper where the felony underlying the felony-murder charge is armed robbery.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *James Krogsrud),* for defendant on appeal.

Before: T. M. BURNS, P.J., and BEASLEY and C. W. SIMON,* JJ.

C. W. SIMON, J. Defendant was convicted of first-degree felony murder after a jury trial. MCL 750.316; MSA 28.548. He was sentenced to serve a mandatory term of life imprisonment. This appeal is of right.

Defendant's conviction of felony murder came from the robbery-homicide of Charles Thompson. On August 24, 1977, the body of the deceased was found on a bed in his home by his housekeeper. Thompson had been repeatedly stabbed. A 12-inch butcher knife with blood on the blade was lying next to the body. Nearby, also in the bedroom, was a broken letter opener. The forensic pathologist who testified at trial attributed the wounds to two different instruments.

Murvin Jennings, given immunity in return for his testimony, testified as the prosecution's chief witness. Jennings said that he, defendant, and defendant's brother went to the victim's home with the intention of robbing Thompson. Jennings had known Thompson for several years as a friend. The robbery scheme was Jennings' plan.

* Circuit judge, sitting on the Court of Appeals by assignment.

After the three men entered the victim's house, defendant held a pistol to Thompson's head and told him to be quiet. Defendant tied Thompson's hands behind him, took him to the bedroom and sat Thompson on the bed. While defendant remained in the bedroom Jennings and the defendant's brother ransacked the home and removed the loot to a waiting automobile.

According to Jennings, when the two men returned to the bedroom, defendant told Jennings that "we couldn't leave him (Thompson) alive because he knew me and saw him". Jennings objected but later left with defendant's brother. Five or ten minutes later defendant joined them in the car and they drove away. Jennings testified that he did not see any blood on the defendant or his clothing.

Forensic experts examining the premises following the murder identified a fingerprint belonging to the defendant on a Styrofoam cover found in the kitchen. However, prior to trial Woodle had told the police that he had never been at the home of the deceased and that he did not know Murvin Jennings.

At trial, the prosecution moved *in limine* to limit cross-examination of witness Jennings regarding the details of an unrelated homicide which occurred in 1979. In that case Jennings was charged with murder and convicted of manslaughter. Defense counsel argued in opposition that the 1979 killing was so similar that evidence of it should be admissible as that of a similar act, MRE 404(b), to show that Jennings was the killer.

The defense attorney argued that the evidence would show that: (1) in both crimes the victims were homosexuals, (2) in both crimes the victims died as a result of multiple stab wounds, and (3) in

the instant case, escape was made in the victim's automobile and in the unrelated homicide, escape was made using the victim's bicycle.

The prosecutor argued that the only real similarity between the homicides was the fact that they were the result of multiple stab wounds. The manslaughter conviction involving Jennings arose out of a homosexual encounter at the home of the deceased, to which Jennings had been invited. There, the victim's unclothed body was discovered after a homosexual act. The prosecutor challenged defense counsel's statement that the evidence would show that Thompson had been a homosexual.

Defense counsel responded that the police investigation of the instant case had revealed that young men frequented the victim's house and, from that, it could be inferred that the victim was a homosexual with whom Jennings had had a relationship. The prosecutor responded that the evidence would show that the victim was Jennings' sponsor on a work release program in which Jennings was enrolled following his release from prison, where he was serving a sentence for a prior offense. The prosecutor also noted that, unlike the case in the prior conviction, the victim in the instant case was fully clothed and the house had been ransacked and items taken.

In granting the prosecution motion the trial judge ruled "that is not enough to satisfy the court that you have shown such a similarity so that Mr. Woodle should be entitled to have this brought out * * *." The trial court later stated to defense counsel: "You have not demonstrated to me that just because there was a fair amount of stab wounds that established [a homosexual] affair in the first place."

Defendant now claims that his constitutional right to confront and cross-examine his accusers was denied by the ruling which limited defense counsel's cross-examination of his chief accuser, Jennings. US Const, Am VI; Const 1963, art 1, § 20.

We review the trial judge's decision on the evidence question for legal error. MRE 104(a). Our review tests the complex interplay between the defendant's constitutional right to cross-examine prosecution witnesses and the law of evidence that irrelevant matters are not admissible, MRE 402.

The single defense offered in this case was that Jennings, not the accused, was Thompson's killer. While it is true that much of the evidence surrounding the earlier homicide and Jennings' conviction for manslaughter was otherwise admitted in evidence, the fact of homosexual involvement was not, despite some evidence in the instant case which would arguably support an inference of homosexual involvement between Jennings and the deceased.

MRE 404(b) provides:

"(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof or motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crime, wrongs, or acts are contemporaneous with, or prior or subsequent to the crime charged."

The important interest protected by Rule 404(b) is that of a defendant's right to a fair trial. The rule's purpose is to preclude admission into evi-

dence of other crimes except where the evidence is probative and relevant concerning motive, opportunity, scheme, plan, etc. The policy consideration which underlies the general exclusion of evidence of prior or similar bad acts for substantive purposes is the desire to avoid the danger of conviction based on a defendant's history of other misconduct rather than upon the evidence of his conduct in the case at issue. *People v Golochowicz,* 413 Mich 298, 308; 319 NW2d 518 (1982).

By contrast, the constitutional right to cross-examination protects the truth-finding process itself. Where occasion has demanded, federal and state courts have not hesitated to strike down statutes, court rules or lower court decisions where they materially restricted the right of an accused to cross-examine a prosecution witness. *Chambers v Mississippi,* 410 US 284, 295, 297-298; 93 S Ct 1038; 35 L Ed 2d 297 (1973); *Davis v Alaska,* 415 US 308, 319; 94 S Ct 1105; 39 L Ed 2d 347 (1974); *People v Bell,* 88 Mich App 345, 348-349; 276 NW2d 605 (1979); *People. v Monasterski,* 105 Mich App 645, 658; 307 NW2d 394 (1981); *People v Redmon,* 112 Mich App 246, 255; 315 NW2d 909 (1982).

In *Davis v Alaska, supra,* the Court held that an Alaska statute which barred disclosure of an "adjudication, order or disposition of a juvenile case" unconstitutionally infringed on the defendant's constitutional right to confront and cross-examine witnesses against him. After articulating its decision, the Court went on to reason at length concerning the importance of cross-examination to the jury in its fact-finding role. The Court said:

"We cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted this line of reasoning had counsel been permit-

ted to fully present it. But we do conclude that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on Green's testimony which provided 'a crucial link in the proof * * * of petitioner's act.' The accuracy and truthfulness of Green's testimony were key elements in the State's case against petitioner. The claim of bias which the defense sought to develop was admissible to afford a basis for an inference of undue pressure because of Green's vulnerable status as a probationer, as well as of Green's possible concern that he might be a suspect in the investigation.

"We cannot accept the Alaska Supreme Court's conclusion that the cross-examination that was permitted defense counsel was adequate to develop the issue of bias properly to the jury. While counsel was permitted to ask Green *whether* he was biased, counsel was unable to make a record from which to argue *why* Green might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial. On the basis of the limited cross-examination that was permitted, the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness or, as the prosecutor's objection put it, a 'rehash' of prior cross-examination. On these facts it seems clear to us that to make any such inquiry effective, defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. Petitioner was thus denied the right of effective cross-examination which 'would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.'" (Citations omitted.) 415 US 317-318.

While the test here does not concern Jennings' bias, his credibility and the full reason for his testimony were certainly at issue. The jury de-

served the full history of Jennings' involvement in the similar homicide in light of the defense raised.

Emphatically, we do *not* say that MRE 404(b) is unconstitutional. We hold only that its application to the facts of this case operated to deprive the defendant of his state and federal constitutional right to be able to effectively cross-examine witness Jennings.

We also find error in the trial court's ruling on a defense motion *in limine* concerning impeachment of the defendant by evidence of prior convictions. The defendant's record was extensive; a 1971 conviction for assault with intent to rob while armed and one conviction in 1972 and two convictions in 1977 for armed robbery. The trial court ruled that all but the 1971 conviction would be admissible to impeach the defendant, if he took the stand to testify.[1] Defendant did not testify, and the prosecution argued the fact that the jury had "no good explanation as to how that fingerprint (defen-

---

[1] The court stated:

"I know different judges vary on this. I am extremely cautious of similar crimes because, you know, I do not think it is fair if you have got a guy who is charged with assault with intent to murder, three convictions of armed robbery or assault to do this, kind of like telling me this guy is assaultive when he does things. I kind of follow the rules more similar to prior convictions; the more caution we have to utilize in deciding whether the prior conviction could or should be used. In a case like you gentlemen tell me this one is going to be, of course, the credibility of witnesses, particularly with an accomplice, seems to be what the case will be more or less about, robbery armed *[sic]* quite obviously felonies and they are also quite obviously crimes which have to do with basis dishonesty and I do not think there is any question about that.

"What you have charged here is felony murder. In connection with the claim that is dissimilar, I will not suppress the prior—the record. I think that the probative value outweighs any possible prejudicial impact with the exception, again we are talking about jurors of lay people. I will quash that one, that was assault with intent to murder *[sic]*. I realize robbery armed is an assault, no question about that, but when the title of a crime is an assault with intent to, to a lay jury that might tell them this is more than robbery armed. But plain robbery armed I will allow him to cross-examine and testify about."

dant's) would be on the kitchen floor * * *" in its closing argument.

In *People v Hughes,* 411 Mich 517; 309 NW2d 525 (1981), the Supreme Court again reiterated, briefly, earlier pronouncements on the same issue in *People v Jackson,* 391 Mich 323, 333; 217 NW2d 22 (1974), and *People v Baldwin,* 405 Mich 550, 552-553; 275 NW2d 253 (1979). The Court concluded that the trial court erred in admitting evidence of a prior homicide in that defendant's murder trial.

Where the prejudicial effect of evidence of the former conviction outweighs its value to the jury, evidence of the former crimes must be excluded. We find that, since the defendant was on trial for felony murder involving armed robbery as the underlying felony, evidence of several armed robberies in the defendant's past, while very probative of credibility, is outweighed by its cumulative prejudicial impact. On retrial the prosecution is limited to impeachment by evidence of a single armed robbery conviction if it wishes to impeach the defendant by his prior criminal record.

After examining the other issues raised on appeal, we conclude that they are without merit.

Reversed and remanded for a new trial.