## PEOPLE v. FINKS.

1. BASTARDS—EVIDENCE OF PREVIOUS PROCEEDING—INSTRUCTIONS— CREDIBILITY OF WITNESSES.

It was not reversible error for court to admit a court file in previous bastardy proceeding on complaint of same prosecuting witness in instant bastardy proceedings, where trial court restricted jury's consideration of file by instructions to determine credibility of witnesses (CL 1948, § 617.63; § 722.601 et seq.).

2. SAME—JURY—CHARACTER OF DEFENDANT.

A jury in a bastardy proceeding has a right to know what manner of man the defendant has been in the past (CL 1948, § 722.601 et seq.).

3. WITNESSES—CROSS-EXAMINATION AS TO CHARACTER—CREDIBILITY —DISCRETION OF COURT.

The extent of cross-examination for purpose of showing the true character of a witness, to enable the jury to weigh his testimony is left to the discretion of the trial judge and will not be reviewed unless discretion is clearly abused (CL 1948, § 617.63).

4. BASTARDS — WITNESSES — CREDIBILITY — EVIDENCE — CROSS-EXAMINATION.

It was not reversible error to present testimony in bastardy proceeding as to prior convictions of defendant for gambling, engaging in illegal occupation, disorderly person, loitering in a gambling house and possession of mutuel betting slips, where

REFERENCES FOR POINTS IN HEADNOTES

[1, 6] 7 Am Jur, Bastards § 106 et seq.
[2] 7 Am Jur, Bastards, § 120.
[2] Admissibility of evidence in a bastardy proceeding of defendant's reputation or character as to chastity and morality. 110 ALR 335.
[3, 4] 58 Am Jur, Witnesses §§ 726, 870.
[7] 7 Am Jur, Bastards § 80.
[8] 7 Am Jur, Bastards § 128.
[10] 10 Am Jur, Certiorari § 19.

he failed on cross-examination to remember the nature, dates, places and number of convictions, no effort was made to enlarge upon the details of the convictions and the record was offered upon the sole issue of the credibility of the witness (CL 1948, § 617.63; § 722.601 *et seq.*).

5. SAME—PROMISE TO MARRY COMPLAINING WITNESS—QUESTION FOR JURY.

Question of whether defendant in bastardy proceeding had ever promised to marry the complaining witness was properly submitted to jury in order to show the relationship between the parties, where there was proof that he had made such a promise (CL 1948, § 722.601 *et seq.*).

6. SAME—CHILD AS PUBLIC CHARGE—EVIDENCE.

It was not error for a social worker for department of welfare to testify in bastardy proceeding that she signed the complaint charging defendant with being the father of child born out of wedlock, since the matter of whether or not a child born under such circumstances may become a public charge is naturally involved (CL 1948, § 722.601 *et seq.*).

7. SAME—PURPOSE OF PROCEEDING.

The ultimate purpose of a bastardy proceeding is to establish the paternity of the bastard in question, and to require the father of such child to contribute to its support and maintenance so that the child will not be wholly dependent upon the mother for support, or upon public or private charity for its maintenance and education.

8. SAME—INSTRUCTIONS—PATERNITY—CHILD AS PUBLIC CHARGE.

The trial court was not in error in instructing jury in bastardy proceeding that the matter of whether the child born under such circumstances might become a public charge was of concern but emphasized that the sole question to determine was whether or not defendant was the father of the child, a fact which the people must prove by a preponderance of the evidence (CL 1948, § 722.601 *et seq.*).

9. SAME—EVIDENCE.

Issue of fact as to defendant's paternity was properly submitted to jury under conflicting evidence presented in bastardy proceeding and evidence presented supported finding that defendant was the father of the child (CL 1948, § 722.601 *et seq.*).

10. CERTIORARI—SCOPE OF REVIEW—EVIDENCE.

The Supreme Court may only inquire if there was some evidence to support jury's verdict, where review is by certiorari.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted June 16, 1955. (Docket No. 63, Calendar No. 46,478.) Decided October 3, 1955. Rehearing denied December 1, 1955.

Bastardy proceedings against Arthur W. Finks resulting in jury verdict of guilty. Defendant appeals. Affirmed.

*Thomas M. Kavanagh,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Gerald K. O'Brien,* Prosecuting Attorney, *Samuel Brezner* and *Angelo A. Pentolino,* Assistant Prosecuting Attorneys, for the people.

*Harry J. Lippman (Benedict Segesta,* of counsel), for defendant.

KELLY, J. A complaint was issued out of the recorder's court of the city of Detroit charging the defendant, Arthur W. Finks, with being the father of a child born out of wedlock to complaining witness Louise Gardner, on September 8, 1949. A jury returned a verdict of guilty.

For the purpose of this opinion appellant's numerous reasons for reversal will be consolidated into the following 5 questions.

Question 1: *Did the court err in overruling defendant's motion to strike all questions and answers introduced into the record by the people as to the child Arita?*

Louise Gardner gave birth to Arita in July, 1947, over 2 years before the birth of the child whose paternity is at issue in this case. At that time an action similar to the one now before this Court was instituted by Louise Gardner against defendant. On cross-examination defendant testified that when he was brought before the court he first denied he was

the father of Arita, but later admitted it, because he didn't want any trouble. On direct examination defendant admitted he was contributing to the support of Arita.

The court allowed the introduction of the court file in the case involving Arita, which disclosed an order for defendant's probation because of his failure to pay the $8 per week for Arita as ordered by the court. We do not believe this constituted reversible error, particularly in view of the following instruction of the court:

"I have been requested to charge you, members of the jury, and I do so charge you, that all reference to the child, Arita, as made in this case, either as received of record over objections of counsel for the defendant, in the form of verbal testimony, or in the form of documentary evidence, may be taken by you merely as to the question of the acquaintanceship and the friendship, or other term you may see fit to apply, as to the relation of these parties, but the mere fact that there was a former lawsuit wherein the defendant in this case was adjudged to be the parent of another child born to the plaintiff, complaining witness, in this case does not, and must not, be taken by you as evidence, or even discussed by you, of his guilt in this particular case. In other words, every case stands on its own merits and on the proof that has been presented. The testimony that has been received with respect to the child Arita was brought in mainly on the ground of credibility of witnesses."

Question 2: *Did the court err in permitting testimony as to defendant's arrests and convictions?*

The criminal record was not offered in evidence until defendant had failed on cross-examination to remember the nature, dates, places and number of convictions. The record the court allowed to be introduced disclosed convictions for gambling, engaging in an illegal occupation, disorderly person,

loitering in a gambling house, and possession of mutuel betting slips.

The right to show these convictions for the purpose of determining credibility is established by CL 1948, § 617.63 (Stat Ann § 27.912).*

In determining the weight to be given the defendant's testimony the jury had a right to know what manner of man he had been in the past. See *Van-Goosen* v. *Barlum,* 214 Mich 595; *People* v. *Cummins,* 47 Mich 334.

In *Lunde* v. *Detroit United Railway,* 177 Mich 374, 378, this Court held:

"The extent of cross-examination for the purpose of showing the true character of the witness, so as to enable the jury to properly judge the weight to give the testimony, should be and is left to the discretion of the trial judge, and will not be reviewed unless this discretion is clearly abused."

There was no effort made to enlarge upon the details of the convictions and the record was offered with credibility of the witness as the sole issue. This was permissible because of the defendant's evasive and forgetful memory.

Question 3: *Did the court commit error in allowing testimony in regard to defendant's promises to marry Louise Gardner?*

It was proper to allow this proof to show the relationship between the parties. Defendant denied ever discussing marriage, and the question was one that was properly submitted to the jury.

Question 4: *Did the court err in instructing the jury?*

The court did not err in instructing the jury, and no purpose would be served here in setting forth the numerous reasons complained of by the appellant.

---

* PA 1915, No 314, ch 17, § 63.

One reason advanced, however, is of first impression in this State and will be considered in this opinion. The question involves the court's right in its charge to the jury to refer to the State's interest in a bastardy case because of the fact that the child "born out of lawful wedlock * * * is likely to become a public charge."

Defendant requested the court to charge as a matter of law, as follows:

"I charge you as a matter of law that you are in no manner here concerned with whether or not this child, Penny, will be the public charge or subject to welfare assistance in the event you do not find this defendant, Arthur Finks, to be her blood father. The problems of our society are not here involved in this case, and it would of course be manifestly wrong to find this defendant guilty in this case solely and alone because of any thought or effort on the part of any of you to avoid public responsibility that may attach in the event of your verdict here being not guilty."

The request was denied.

Appellant calls this Court's attention to the fact that in 3 different instances the trial court in its charge referred to the likelihood of the child becoming a public charge:

"Because you realize, first of all, the people must establish to your satisfaction by a preponderance of the evidence that the complaining witness and the defendant in this case did have intercourse on the date set forth in the complaint and as a result thereof a child was born, and it was born to her in the county of Wayne, and that child is living and likely to become a public charge. * * *

"It is for you to determine whether at the time and place in question, as set forth by the proofs in this case—and that is the only thing you have to go by—this defendant did have intercourse with the

complaining witness at the time and place alleged and as a result of such intercourse she became pregnant and gave birth to a child, which under the law is a child designated as born out of lawful wedlock and likely to become a public charge. That is the sole question of fact for your consideration and determination.   *   *   *

"All we are concerned with is just to determine that question as a question of fact and whether or not that child so born under the circumstances is likely to become a public charge."

In *Cunningham* v. *State, ex rel. Zartman,* 65 Ind 377, and in *State, ex rel. Freeman,* v. *Morris,* 156 Ohio St 333 (102 NE2d 450), the Indiana and Ohio supreme courts condemned the practice of a trial court instructing the jury in reference to the likelihood of a child in a bastardy case becoming a public charge and the possibility of the State being required to care for said child. In *Menn* v. *State,* 132 Wis 61 (112 NW 38), the court criticized a charge where the jury were told that the interest of the State and county to be relieved from expense by reason of the illegitimate child was at stake, and, therefore, the case was equally important to both sides.

The Oklahoma supreme court, in *Lawhead* v. *State,* 99 Okla 197 (226 P 376), passed upon an instruction of the lower court which informed the jury that the purpose in proceedings in bastardy cases was to indemnify the public against the burden of supporting the child, with the following statement (pp 199, 200):

"The purpose of the proceeding is a true statement, under the law we cannot see where the defendant's rights are prejudiced thereby as we cannot believe a juror would be disposed to find against an innocent man to save the taxpayers from supporting the outcast child."

In *State, ex rel. Feagins*, v. *Conn,* 160 Kan 370, 374 (162 P2d 76), the Kansas supreme court approved the following instruction of the lower court:

 · " 'The ultimate purpose of a bastardy proceeding, such as this, is to establish the paternity of the bastard in question, and to require the father of such child to contribute to its support and maintenance so that the child will not be wholly dependent upon the mother for support, or upon public or private charity for its maintenance and education.' "

In *People* v. *Hamilton,* 95 Mich 210, the question arose as to whether the pendency of bastardy proceedings in the circuit court was a bar to a second complaint and examination for the same offense. The following quotation from that opinion deals with the nature and purpose of bastardy cases:

"The remedy in bastardy cases is purely statutory. It has for its object the protection of the public from the support of bastards by requiring the putative father to contribute, and to furnish indemnity to the authorities and assistance to the mother."

The trial court in the present case correctly called to the jury's attention the unusual features of a bastardy proceeding by stating:

"This litigation has to do with the birth of children born out of lawful wedlock. As I say, it is a matter pertaining to the paternity of the child. The sole question involved in this litigation and in this class of lawsuit is the parentage of the child. It is neither a civil case nor is it a criminal case; it is what is termed in law as a quasi criminal case— possibly, you might say just in between those 2 great classifications of our law, civil and criminal."

This case was presented to the jury entitled "People of the State of Michigan *v.* Arthur W. Finks," and a social worker for the department of public welfare testified that she signed and sent to

the prosecutor's office the form on which the complaint charging defendant with being the father of the child was then issued. No error is or could be assigned because this testimony was offered to the jury.

It is difficult to understand how a case so entitled and brought in the name of the people could be presented to a jury without some reference to the State's interest because of the possibility or likelihood of the child becoming a public charge.

Care and caution must be exerted in instructing a jury in a bastardy proceeding, and we are reaffirming the principle set forth in *People* v. *Martin,* 256 Mich 33, 35, 36, wherein this Court said:

"The sole question in a bastardy proceeding is whether the defendant is guilty or not.   *   *   *

"Frequently in a proceeding of this nature the jury may be somewhat swayed by their emotions and sympathies so as to overlook the important testimony bearing upon the main issue of the case."

In the present case we adopt the statement of the Oklahoma supreme court—we cannot believe that the jury found against an innocent man to save the taxpayers from supporting the child, because when we read the entire instruction to the jury we come to but 1 conclusion, namely: That the trial court emphatically instructed the jury that they must not find the defendant to be the father of the child unless they were satisfied by a preponderance of the evidence that he was the father.

Question 5: *Was the verdict of the jury contrary to the great weight of evidence?*

There was sharp conflict between the testimony offered by the people and the defendant, but the record shows an issue of fact which was properly submitted to the jury. This review is by certiorari, and under the decision of *People* v. *Swanson,* 217

Mich 103, this Court may only inquire if there was some evidence to support the verdict. There was sufficient evidence to support the verdict in the instant case.

Judgment affirmed.

CARR, C. J., and BUTZEL, SMITH, SHARPE, BOYLES, REID, and DETHMERS, JJ., concurred.