PEOPLE *v.* COOK

1. SEARCHES AND SEIZURES—WITHOUT WARRANT—CRIMINAL LAW—
   KIDNAPPING—EVIDENCE—FINGERPRINTS.

   Taking defendant's automobile and dusting it for latent finger-
   prints of a kidnapped child was valid without a warrant where
   the evidence showed that the police had probable cause to
   arrest the defendant for the kidnapping, that they were law-
   fully on the defendant's premises for the purpose of arresting
   him, that the defendant's car was parked in an open garage
   within the officers' plain view, and that they observed the
   parked car matched the descriptions of the kidnapper's vehicle
   given by the kidnapped victim and by an eyewitness; there-
   fore the police, having good reason to believe that the car
   had been used as an instrument of the crime, were justified
   in preserving it as evidence of the defendant's guilt, and
   since the car was in plain sight, no search was required for
   its discovery and, once having been seen, it was subject to
   seizure without a warrant.

2. SEARCHES AND SEIZURES—WITHOUT WARRANT—CRIMINAL LAW—
   KIDNAPPING—EVIDENCE—FINGERPRINTS.

   A search without a warrant of a defendant's seized automobile
   for latent fingerprints of a kidnapped child was valid where
   the fingerprint search was closely related to the reason for
   which the defendant was arrested and to the reason for which
   the police impounded and retained his vehicle because it had
   been used to kidnap the child and scientific testing and exam-
   ination of objects properly seized as evidence of a crime are
   plainly within the realm of legitimate police investigative
   technique.

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 47 Am Jur, Searches and Seizures §§ 18, 19.
[2, 3] 21 Am Jur 2d, Criminal Law § 369.
[4] 58 Am Jur, Witnesses § 630.

3. SEARCHES AND SEIZURES—WITHOUT WARRANT—CRIMINAL LAW—
KIDNAPPING—EVIDENCE—FINGERPRINTS.

> Propriety of admission in evidence of an enlargement of a
> kidnapped child's fingerprint found inside defendant's car as
> affected by a June 23, 1969, decision of the United States
> Supreme Court regarding the standard of reasonableness to
> be applied to searches without warrants need not be decided
> where the search of defendant's car without a warrant oc-
> curred before that decision because the standard was not
> retroactive.

4. WITNESSES — CRIMINAL LAW — CRIMINAL CONVICTIONS — CROSS-
EXAMINATION — IMPEACHMENT.

> Trial court's ruling that the people would be permitted to im-
> peach the defendant's credibility by use of his prior criminal
> record was not erroneous because the people, by statute, have
> the right to cross-examine a defendant concerning his criminal
> convictions where the purpose is to assist the jury in deter-
> mining the defendant's credibility as a witness in his own
> behalf.

Appeal from Genesee, Elza H. Papp, J. Sub-
mitted Division 2 March 5, 1970, at Lansing.
(Docket No. 6,034.) Decided June 22, 1970. Leave
to appeal denied February 10, 1971. 384 Mich 805.

Paul Cook was convicted of kidnapping. Defend-
ant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Robert F. Leonard,*
Prosecuting Attorney, and *Donald A. Kuebler,* Chief
Assistant Prosecuting Attorney, for the people.

*Louisell & Barris* (*Carl Ziemba,* of counsel), for
defendant on appeal.

Before: J. H. GILLIS, P. J., and DANHOF and
O'HARA,* JJ.

---

* Former Supreme Court Justice, sitting on the Court of Appeals
by assignment pursuant to Const 1963, art 6, § 23 as amended in
1968.

J. H. GILLIS, P. J.   On June 4, 1968, defendant
Paul Cook was tried by a jury and convicted of kid-
napping, MCLA § 750.349 (Stat Ann 1954 Rev
§ 28.581).   He was sentenced to prison for a term of
20 to 40 years.   On appeal, defendant alleges an
illegal search and seizure and trial error.

The proofs adduced at trial depict a familiar
scene: While on her way to Holy Family school,
Grand Blanc, on the morning of February 8, 1968,
Polly Farney, a 9-year old, was told by a stranger
that her classes had been cancelled for the day.   The
stranger, identified by Polly at trial as defendant
Cook, was seated in a car parked near the school.
He offered to drive Polly home; he also offered her
a candy bar.   Polly entered the car; she was not
taken home, however.   At one point, Polly opened
the car door and ran from the defendant.   She was
caught by the arm, taken back to the car, and in-
structed by defendant to keep her eyes shut.   Ac-
cording to Polly's testimony at trial, defendant Cook
unzipped his clothes and began pulling on Polly's
leotard.   Polly testified that the stranger eventually
returned to the school and released her.

After Polly's return to school, the state police
were called.   Trooper Robert Kelly interviewed
Polly and she described the man who had picked
her up.   Polly also described the car driven by the
stranger.   It was a white vehicle with a black interior
and bucket seats.   The car was smaller than a full-
sized-car—a compact model.

Unknown to defendant, a passing motorist, one
James Britz, had observed defendant's "unusual"
presence at the school on the morning of February
8.   Mr. Britz had taken his children to Holy Family
school on the morning of the offense.   He thought
it strange to see a car parked near the school with
an unfamiliar male occupant.   Britz observed the

car's color and make; he also jotted down the car's license number, KF 1863. Later that day, Britz discovered from his children that a stranger had picked up a little girl in his car and had taken her from school. He immediately called the police and informed them of the license number of the car seen earlier. A police registration check revealed that the car was registered in the name of Paul Cook.

On February 10, 1968, state police troopers Kelly and James Collins went to defendant's home to arrest him. Upon arrival, they observed a white compact car bearing license number KF 1863 located in the garage adjacent to defendant's house. The car was seen through an open garage door.

The troopers learned from Mrs. Cook that her husband was not at home. Trooper Collins informed Mrs. Cook that the state police were investigating a kidnapping and that her husband was a suspect. Mrs. Cook was told that the car would be taken as evidence. A police wrecker was called and the car was towed to a state police garage where it was secured and marked, "protect for prints."

Defendant Cook was located at his place of business on the afternoon of February 10, 1968. He voluntarily accompanied state troopers to the Flint police station where both Polly Farney and James Britz identified defendant Cook in a lineup. Cook was then arrested.

Cook's automobile remained secured in the state police garage until February 12, 1968. On that date, two days after defendant's arrest, fingerprint experts from the state crime laboratory unlocked the car and dusted its interior for latent prints. Fingerprints were found inside the car which matched those of Polly Farney.

Defendant filed a pretrial motion to suppress people's exhibit 7, an enlargement of a print found

on the right front inside door handle of defendant's car, on the ground that such evidence was the product of an unlawful search and seizure. Defendant relied principally on *Preston* v. *United States* (1964), 376 US 364 (84 S Ct 881, 11 L Ed 2d 777). The trial court denied defendant's motion following an evidentiary hearing. At trial, an expert witness testified for the people that exhibit 7 matched prints made by the right little finger of Polly Farney.

## I

Defendant contends that admission of people's exhibit 7 as evidence against him was constitutional error. He alleges that the warrantless search of his car for latent fingerprints violated his rights under the Fourth Amendment, as applied to the states through the Fourteenth Amendment, of the United States Constitution. See *Mapp* v. *Ohio* (1961), 367 US 643 (81 S Ct 1684, 6 L Ed 2d 1081, 84 ALR2d 933). Defendant reiterates reliance on *Preston* v. *United States, supra.*

The people contend that under *Cooper* v. *California* (1967), 386 US 58 (87 S Ct 788, 17 L Ed 2d 730), the taking of defendant's car and the subsequent search of the car for latent fingerprints was valid without a warrant.

The basic question we must answer is whether the actions of the police were reasonable under all the circumstances. As noted in *People* v. *McDonald* (1968), 13 Mich App 226, 232:

"Where a warrant has not been obtained, the validity of the search depends on the law's appraisal of the reasonableness of the search, only unreasonable warrantless searches and seizures being barred."

And see, *People* v. *Gonzales* (1959), 356 Mich 247, 253; *People* v. *Zeigler* (1960), 358 Mich 355, 375;

*People* v. *Herrera* (1969), 19 Mich App 216, 229. For reasons which follow, we hold that the warrantless conduct of the police in taking defendant's car and subsequently dusting it for fingerprints was reasonable in constitutional terms.

The facts presented at the evidentiary hearing on defendant's motion to suppress support the trial court's finding that the police had probable cause to arrest defendant Cook for the kidnapping of Polly Farney. This finding is not contested by defendant on appeal. Having probable cause to arrest defendant, the police were entitled to go to defendant's residence to arrest him; they were lawfully on defendant's premises. MCLA § 764.15(d) [Stat Ann 1954 Rev § 28.874(d)]. *People* v. *Eddington* (1970), 23 Mich App 210. Once lawfully on the premises, Troopers Kelly and Collins were not required to disregard objects falling in plain view, including defendant's car.

"It has long been settled that objects falling in plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Harris* v. *United States* (1968), 390 US 234, 236 (88 S Ct 992, 993; 19 L Ed 2d 1067, 1069).

Accord, *People* v. *Orlando* (1943), 305 Mich 686; *People* v. *Kuntze* (1963), 371 Mich 419; *People* v. *Tetts* (1967), 6 Mich App 254; *People* v. *Hopper* (1970), 21 Mich App 276; *People* v. *McDonald, supra.*

It is undisputed that defendant's car was in plain view; it was parked in an open garage. Moreover, the car observed in defendant's garage matched descriptions of the vehicle used by the kidnapper given by both Polly Farney and James Britz. Under these circumstances, the state police had reasonable cause to believe that the car had been used

to effectuate the crime. The car itself was evidence of defendant's guilt. It was an instrumentality of the crime. Since the police had good reason to believe that the car seen parked in defendant's open garage was used as an instrumentality of the kidnapping, they were justified in preserving the car itself as evidence of defendant's guilt. Being in plain sight, no search was required for its discovery. *Harris* v. *United States, supra.* And, once seen, the car was subject to warrantless seizure. *Cooper* v. *California, supra; State* v. *McCoy* (1968), 249 Or 160 (437 P2d 734); *People* v. *Nugara* (1968), 39 Ill 2d 482 (236 NE2d 693), *cert den* 393 US 925 (89 S Ct 257, 21 L Ed 2d 261); *State* v. *McKnight* (1968), 52 NJ 35 (243 A2d 240); *State* v. *Russell* (1969), 282 Minn 223 (164 NW2d 65); *People* v. *Teale* (1969), 70 Cal 2d 497 (75 Cal Rptr 172, 450 P2d 564); *State* v. *Carter* (1969), 54 NJ 436 (255 A2d 746); *State* v. *Thompson* (1970), 285 Minn 529 (173 NW2d 459).

We agree with the trial court's determination that *Preston* v. *United States, supra,* is distinguishable. In *Preston,* defendant had been arrested on a charge of vagrancy. The warrantless search of his automobile while he was in custody produced evidence used to convict defendant of conspiring to rob a federally insured bank. It was held that the evidence was inadmissible because the warrantless search was too remote in time or place to have been incidental to the arrest and therefore made in violation of the test of reasonableness under the Fourth Amendment.

The later decision of the United States Supreme Court in *Cooper* v. *California, supra,* however, makes it clear that not every warrantless search of an automobile made after a defendant's arrest is unlawful. In *Cooper,* it was held that the search of an automobile is reasonable within the meaning of

the Fourth Amendment if it is closely related to the reason the accused is arrested and the reason the car is impounded and being retained.   Mr. Justice Black noted, 386 US at 61 (87 S Ct at 790, 791, 17 L Ed 2d at 733):

"While it is true, as the lower court said, that 'lawful custody of an automobile does not of itself dispense with constitutional requirements of searches thereafter made of it,' *ibid. the reason for and nature of the custody may constitutionally justify the search.* Preston was arrested for vagrancy.   An arresting officer took his car to the station rather than just leaving it on the street.   It was not suggested that this was done other than for Preston's convenience or that the police had any right to impound the car and keep it from Preston or whomever he might send for it.   *The fact that the police had custody of Preston's car was totally unrelated to the vagrancy charge for which they arrested him.   So was their subsequent search of the car.*   This case is not Preston, nor is it controlled by it.   Here the officers seized petitioner's car because they were required to do so by state law.   They seized it because of the crime for which they arrested petitioner.   They seized it to impound it and they had to keep it until forfeiture proceedings were concluded.   *Their subsequent search of the car—whether the State had 'legal title' to it or not—was closely related to the reason petitioner was arrested, the reason his car had been impounded, and the reason it was being retained."*   (Emphasis supplied.)

Likewise, in the present case, the state police seized defendant's car because of the crime for which they arrested him.   His car had been used to kidnap Polly Farney.   It was properly seized as an instrumentality of the crime.   Their subsequent search of the car for Polly's fingerprints was closely related to the reason defendant was arrested, the

reason his car had been impounded, and the reason it was being retained. The search was therefore valid without a warrant. *Cooper* v. *California, supra; People* v. *Sims* (1970), 23 Mich App 194.

Finally, we are of the view that it is plainly within the realm of legitimate police investigative technique to subject objects properly seized as evidence of crime to scientific testing and examination and that defendant cannot reasonably contend that the dusting of his car for fingerprints was in derogation of his Fourth Amendment rights. On this point, we are in accord with the reasoning expressed by Chief Justice Weintraub in *State* v. *McKnight* (1968), 52 NJ 35, 57, 58 (243 A2d 240, 253):

"We think it sound to say that an automobile, seized as an instrument of crime, may be examined or searched without a warrant. * * * Surely a search warrant is not necessary to examine or to test a weapon, or to open the brown bag or valise seized as an instrument used in a bank robbery to see if the stolen money is there. There is no reason to treat an automobile differently from any other chattel employed to commit crime. The question is whether such a search is 'unreasonable,' the final standard under the Fourth Amendment. * * * We see nothing unreasonable about it. There is no threat to the values protected by the Fourth Amendment when the vehicle that is searched was used to accomplish a crime and was seized on that account." (Citations omitted.)

See also, *People* v. *Teale,* 70 Cal 2d 497, 507–510 (75 Cal Rptr 172, 178–180; 450 P2d 564, 570–571).

We conclude that people's exhibit 7 was lawfully introduced in evidence. The conduct of the police in securing defendant's car as evidence and subsequently dusting it for fingerprints was reasonable under all the circumstances. We recognize that the

continuing validity of *Cooper* is open to debate in light of the United States Supreme Court's decision in *Chimel* v. *California* (1969), 395 US 752 (89 S Ct 2034, 23 L Ed 2d 685). Whether the police practices approved in *Cooper* remain constitutionally sound is a question we need not decide, however. The search here occurred on February 12, 1968. Since *Chimel* was decided on June 23, 1969 and this Court has not given it retroactive application, see *People* v. *Herrera* (1969), 19 Mich App 216, 232, *Chimel* is inapplicable to the facts in this case. *Cf. People* v. *Sims, supra.*

## II

Defendant did not testify at trial. His counsel suggests that defendant was forced to remain silent because of an allegedly erroneous ruling by the trial judge—specifically, that the people would be permitted to impeach defendant's credibility by use of his prior criminal record.

We find no error requiring reversal of defendant's conviction. By statute, MCLA § 600.2158 (Stat Ann 1962 Rev § 27A.2158), the people had the right to cross-examine defendant concerning his criminal convictions, the purpose being to assist the jury in determining the credibility of defendant as a witness in his own behalf. *People* v. *Finks* (1955), 343 Mich 304; *People* v. *DiPaolo* (1962), 366 Mich 394; *People* v. *Roney* (1967), 7 Mich App 678; *People* v. *Koontz* (1970), 24 Mich App 336. Defendant does not argue that the trial court should have foreclosed use of a *particular* conviction on the ground that its prejudicial effect far outweighed any probative relevance to the issue of defendant's credibility. Compare *People* v. *Eldridge* (1969), 17 Mich App 306, 312, 313; *People* v. *Eddington, supra.* Rather, relying on *Luck* v. *United States* (1965), 121 App DC 151 (348

F2d 763), defendant urges that we enunciate a broad rule barring use of all prior convictions for impeachment purposes, regardless of their nature.** Neither the District of Columbia Circuit, see *Gordon* v. *United States* (1967), 127 App DC 343, 347 (383 F2d 936, 940), nor any other jurisdiction has gone so far. We likewise decline to embrace such a novel position.

Affirmed.

All concurred.

---

** Defendant contends in his brief that: "The combined cogencies of historical reasons and logical reasons and ideas of fair play now seem to require this Court to enunciate the rule that a defendant in a criminal case may take the stand in his own defense without fear that he will be cross-examined on his past criminal record and that it shall not be introduced through other records unless the defendant chooses to put his character in issue by claiming good character or that he had never been convicted of any crime."