*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

PORSHA MONIQUE TYLER,

Defendant-Appellant.

UNPUBLISHED
November 21, 2023

No. 353914
Macomb Circuit Court
LC No. 2019-001480-FH

ON REMAND

Before: CAVANAGH, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

This matter is on remand for consideration of defendant's claims following an evidentiary hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). See *People v Tyler*, ___ Mich ___; 979 NW2d 667, 668 (2022) (Docket No. 163985) (*Tyler II*). The Michigan Supreme Court ordered this Court to remand this matter to the trial court for it to determine, following a *Ginther* hearing, whether defendant's trial counsel provided ineffective assistance of counsel by "failing to move to suppress the evidence obtained from the warrantless inventory vehicle search, and specifically for failing to inquire regarding the existence of a policy of the Warren Police Department regarding inventory searches of vehicles," and by "failing to question the officers regarding their compliance with any such policy." *Id*. Following the evidentiary hearing, the trial court concluded that defendant was not denied the effective assistance of counsel. We agree and, again, affirm defendant's conviction and sentence.

## I. BACKGROUND FACTS

This case arises from defendant's jury trial conviction of possession of two or more forged driver's licenses, MCL 257.310(9), and sentence, as a second-offense habitual offender, MCL 769.10, to 18 months' probation. *People v Tyler*, unpublished per curiam opinion of the Court of Appeals, issued December 2, 2021 (Docket No. 353914) (*Tyler I*), p 1, vacated and remanded ___ Mich ___; 979 NW2d 667 (2022). The relevant facts were provided in our prior opinion and will not be repeated at length here. In brief, defendant and her then-fiancé, Kelby Snell, got into a

dispute at a Cricket Wireless store which escalated into a physical altercation. Defendant eventually picked up a display cell phone and left the store. Defendant ultimately realized that she left her own cell phone at the store and returned to the store for her phone. When defendant returned to the store, she had not brought back the cell phone that she had taken from the store, although it was not her cell phone. Upon their return to the store, defendant and Snell were arrested for larceny in a building and disturbing the peace.[1] Several police officers were on the scene, including Officer Matthew Accivatti and Officer Alana Jannette. Officer Jannette arrested defendant and Snell. Officer Accivatti and his partner located the suspects' vehicle and, subsequently, an inventory search was conducted because the vehicle was going to be impounded. During the inventory search, several Pennsylvania driver's licenses were found and they all had defendant's photograph on them, but different names on each of them.

Following her jury trial conviction of possession of two or more forged driver's licenses, defendant appealed, arguing that the inventory search was in fact a discretionary search for evidence of a crime, that the impoundment of her vehicle was unlawful, and that her trial counsel was ineffective by failing to move to suppress the evidence discovered in the search. *Tyler I*, unpub op at 2. This Court concluded that it was standard police department procedure to have a vehicle towed when its driver was arrested and the inventory search was a permissible caretaking function. *Id*. at 4. Thus, the impoundment and inventory search did not violate the Fourth Amendment because they were "conducted by the police pursuant to standard police departmental procedure as part of a caretaking function and not for an investigatory purpose." *Id*. Accordingly, the evidence discovered was properly obtained, the trial court did not commit plain error by admitting it at trial, and defendant's trial counsel was not ineffective by failing to move to suppress the evidence obtained from the search. *Id*. at 4-5.

Judge SHAPIRO dissented, disagreeing that any standardized departmental procedure was described or introduced into evidence. *Tyler I*, unpub at 3 (SHAPIRO, J., dissenting). Judge SHAPIRO stated that "the decision to impound and search a vehicle must be based on standardized and reasonable police policies that comply with the Fourth Amendment," and because the record was not adequate to make such determination in this case, he would have remanded for an evidentiary hearing. *Id*. at 3-4. Judge SHAPIRO further opined that there was evidence suggesting that "the characterization of the search as an impoundment was a subterfuge[,]" and the real purpose of the search was investigative. *Id*. at 4.

Defendant then sought leave to appeal with our Supreme Court, and that Court vacated this Court's decision, remanded to this Court for it to remand to the trial court for a *Ginther* hearing, and directed this Court to thereafter resolve the issues presented by defendant. *Tyler II*, ___ Mich at ___; 979 NW2d at 668. On October 26, 2022, this Court remanded this case to the trial court for an evidentiary hearing and decision regarding whether defendant was denied the effective assistance of counsel. *People v Tyler*, unpublished order of the Court of Appeals, entered October 26, 2022 (Docket No. 353914).

---

[1] These charges were dismissed after the witnesses from the store did not appear at the preliminary examination.

## II. TRIAL COURT REMAND PROCEEDINGS

### A. EVIDENTIARY HEARING

The trial court held an evidentiary hearing on February 3, 2023. Defendant's trial counsel, Michael Kitchen, testified that he believed the inventory search was reasonable because the police were taking defendant into custody and impounding the vehicle so that it was not just left abandoned in the parking lot. Trial counsel did not know Warren's specific policies, but he believed from experience that their policy was that, when a vehicle's owner is arrested, their vehicle is impounded and an inventory search is conducted. He was aware that the police also saw the stolen phone in plain view through the window of the car, which also justified the search. Trial counsel did not believe there was a valid Fourth Amendment argument to be made or he would have filed a motion to suppress. He believed that the plain-view search should have ended when the phone was obtained, but the officers still conducted a valid inventory search because the vehicle was being impounded.

Officer Accivatti testified that he and his partner, Officer DeAndre Tucker, were on patrol the day of this incident and were called by dispatch to look for a vehicle in the area of this Cricket Wireless store because of a disorderly person and larceny or unarmed robbery of a display cell phone that had occurred and the suspects had left the store in the vehicle. After the suspects returned to the store and were arrested, Officer Accivatti and his partner were the first officers to approach the suspects' vehicle and they checked to see if anybody else was in the vehicle. When Officer Accivatti looked into that vehicle through the window, he saw a cell phone on the center console with a security device attached to it. He then opened the car door to get the device. The vehicle was going to be impounded because corroborating evidence of the crime was inside the vehicle, i.e., the cell phone with a security device attached; therefore, an inventory search was conducted. The purpose of the inventory search was basically to look "for any other valuables that could be claimed at a later date that were in the vehicle at that time." Also as part of the inventory search, Officer Accivatti testified, he looked inside a bag that was in the car for identification because he was unsure if they were able to identify defendant in the store. And in his experience, evidence of other stolen property or crimes might be found during such a search. Officer Accivatti believed the police department's policy on impoundment and inventory searches was followed in this matter. Officer Accivatti testified that a vehicle is not automatically impounded when someone is arrested; rather, it is determined on a "case by case basis." They would not necessarily tow a vehicle if it was legally parked and had no evidence of a crime.

Officer Jannette testified that she was on patrol when dispatched to the Cricket Wireless store because customers were having an altercation in the store and a cell phone was stolen. She was one of the first officers to arrive inside the store. She watched a video taken by a witness and learned that defendant and Snell were yelling obscenities at the clerk and refused to leave the store when asked to do so. They were destroying the store and disrupting displays. At some point, Snell "acted as a blocker in front of the clerk as [defendant] ripped a cellphone with a security device from a display and they fled the store." Officer Jannette saw that the store was in disarray and that the display was missing a cell phone. Other officers were already at the scene and in the area looking for the suspect vehicle, which was a white Chevy Impala. However, defendant mistakenly left her personal cell phone at the store. And when defendant and Snell returned to the store to retrieve defendant's personal cell phone, they were arrested by Officer Jannette. Officers Accivatti

and Tucker were outside of the store and subsequently advised Officer Jannette that the stolen cell phone was recovered from the suspect vehicle. They had located the vehicle in the parking lot and it was police procedure "to check to make sure nobody else is inside." And when Officers Accivatti and Tucker looked inside the vehicle through the window, they observed the stolen phone with the security device in plain view in the vehicle. Officer Jannette testified: "At which point that would be evidence, so they proceeded to search the rest of the car as it needed to be towed." Officer Jannette did not tell the officers to conduct the inventory search that followed. But the police department has a procedure in place for conducting such searches; for example, when a vehicle is taken as evidence. But there are several different reasons why a vehicle would be towed and an inventory completed.

Officer Tucker testified that he was with Officer Accivatti when the suspects' vehicle was found. He assisted Officer Accivatti in the search of the vehicle and completed the tow sheet. Officer Accivatti was primarily doing the search and Officer Tucker completed the inventory sheet. Officer Tucker testified that a vehicle would be impounded and an inventory search conducted if the vehicle was part of the crime. Officer Tucker followed the Warren Police Department's policy regarding inventory searches by assisting in the search and writing down information regarding the condition of the vehicle.

## B. HEARING ON MOTION FOR NEW TRIAL

On May 5, 2023, a hearing on defendant's motion for a new trial was held. The prosecution noted that the parties agreed that the initial entry into the vehicle was allowed on the basis of the stolen phone in plain view, but they disputed whether further search was justified under the Fourth Amendment. The prosecution argued that trial counsel was not unreasonable because whether the search after the initial plain-view search was proper was an issue of first impression. The prosecution further argued that if a lawful search is conducted and contraband is found, then the police have to impound the vehicle and conduct an inventory search. According to the prosecution, the vehicle was part of the evidence of the crime and, therefore, the police could impound it and conduct an inventory search. The prosecution agreed that the community-caretaking doctrine did not apply in this case. The vehicle was taken as evidence of the crime of receiving and concealing stolen property and then the inventory search was conducted. The police adhered to the inventory policy and, therefore, there was no government misconduct.

The defense argued that the vehicle in this case was not an instrumentality of the crime. The police did not treat the vehicle as evidence of a crime; they did not do fingerprinting or preserve it as evidence. The defense agreed that the police had probable cause to go into the car and recover the stolen cell phone but, after that, no further search was warranted. The search that was actually conducted was investigatory in nature, and not an inventory search, because the police were looking for further evidence of crimes that may have been committed.

## C. TRIAL COURT'S DECISION

The trial court, starting with the prejudice prong, found that there was probable cause that a crime was committed because the officer saw the phone in plain view in the vehicle. On the

basis of *People v Anderson*, 166 Mich App 455; 421 NW2d 200 (1988),[2] which the trial court found still had precedential value, the trial court concluded that the vehicle was used as the instrumentality of the crime of receiving and concealing stolen property and had potential evidentiary value; thus, the police had authority to impound the vehicle. There was no clear overruling of *Anderson* and, therefore, trial counsel's performance did not fall below an objective standard of reasonableness. The trial court noted that there was some testimony that the officers entered the vehicle to search for evidence of other crimes, but that was not their sole purpose. And the court noted that there was no testimony regarding standardized procedures on the manner in which inventory searches are to be conducted and there was testimony that not all items in the vehicle were listed on the form. Nonetheless, the court concluded, under *Anderson*, the initial impoundment was appropriate, the subsequent inventory search was appropriate, and there was no bad faith. The order denying the motion was entered on June 2, 2023.

### III.  APPELLATE REMAND PROCEEDINGS

### A.  SUPPLEMENTAL BRIEFING

After the evidentiary hearing and the trial court's ruling, this Court granted the parties' joint motion for supplemental briefing. *People v Tyler*, unpublished order of the Court of Appeals, entered June 21, 2023 (Docket No. 353914). Defendant argues in her supplemental brief that her car was not an "instrumentality" of a crime under *Anderson*, and *Anderson* was limited to the facts of that case, did not purport to create any principle about the instrumentality exception that could be applied to other cases, and was based on outdated caselaw. Further, the cases on which *Anderson* relied all involved a defendant who took some action inside of the car during the commission of the crime. Defendant, however, was not in her vehicle during the perpetration of the crime, which occurred inside the store, and defendant did not use the vehicle to flee. Thus, defendant argues, the vehicle was merely a container for contraband. Moreover, in each of the instrumentality cases, "the instrumentality exception was not the sole justification for the search of a defendant's vehicle; the fact that the car was the instrumentality of a crime merely gave the police the requisite probable cause to search the vehicle pursuant to the automobile exception." Accordingly, defendant argues, the trial court erred by using the instrumentality exception to justify an inventory search. In *People v Blair*, unpublished per curiam opinion of the Court of Appeals, issued October 29, 2019 (Docket No. 347885), vacated 505 Mich 1012 (2020), this Court held that a lawfully parked vehicle was not the instrumentality of the crime of driving with a suspended license and did not justify an impoundment and inventory search. *Id.*; slip op at 10. Defendant argued that using the instrumentality doctrine to allow a full inventory search of a car whenever the police have probable cause to believe that the car contains contraband would entirely swallow the automobile exception, under which searches are more limited in scope.

Defendant argues that no other exception to the warrant requirement applies in this case and, thus, the search was unconstitutional. The automobile exception did not justify the search because the search far exceeded the scope of a permissible search pursuant to the automobile exception. The probable cause to enter the vehicle expired when the phone was seized. In addition,

---

[2] *Anderson* has been abrogated in part with regard to its discussion of the defense of diminished capacity. See *People v Carpenter*, 464 Mich 223, 235-236; 627 NW2d 276 (2001).

neither the Warren Police Department's policy nor MCL 257.252d permitted the police to impound the vehicle and perform an inventory search. The car had no evidentiary value. The police were looking for evidence of other crimes. Even if the Department's policy allowed the inventory search, the policy is unconstitutional because it gives officers unfettered discretion. Therefore, defendant argued, trial counsel was ineffective by failing to challenge the search.

The prosecution argues that defense counsel testified that, on the basis of his experience, there was not a valid Fourth Amendment violation claim. And defendant conceded after the evidentiary hearing that the initial entry into the vehicle was a valid plain-view search for the stolen phone. Trial counsel was not ineffective for failing to raise a novel legal theory that the subsequent search was unwarranted. Nonetheless, defendant cannot establish prejudice because the search of the vehicle was reasonable and permissible. The police, who approached the vehicle and saw the stolen phone through the window, had probable cause to enter the vehicle under any exception. Thereafter, the police were authorized to impound the vehicle and conduct an inventory search. The vehicle itself was evidence of the crime, was holding stolen property, and was the instrumentality of the crime. Once the police entered the vehicle, not doing an inventory would expose them to claims of stolen property and vandalism. Even if the inventory search was improper, the police did not act in bad faith. Thus, exclusion is not the proper remedy and there is no prejudice.

## B. STANDARD OF REVIEW

"A defendant's ineffective assistance of counsel claim is a mixed question of fact and constitutional law." *People v Shaw*, 315 Mich App 668, 671; 892 NW2d 15 (2016) (quotation marks and citation omitted). "[T]his Court reviews for clear error the trial court's findings of fact and reviews de novo questions of law. The trial court's findings are clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake." *Id*. at 671-672.

"To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Id*. at 672. "Defendant must overcome the strong presumption that counsel's performance was sound trial strategy." *People v Dixon*, 263 Mich App 393, 396; 688 NW2d 308 (2004). "A sound trial strategy is one that is developed in concert with an investigation that is adequately supported by reasonable professional judgments. Counsel must make an independent examination of the facts, circumstances, pleadings and laws involved[.]" *People v Grant*, 470 Mich 477, 486-487; 684 NW2d 686 (2004) (quotation marks and citation omitted). "[D]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, which [this Court] will not second-guess with the benefit of hindsight." *Dixon*, 263 Mich App at 398 (quotation marks and citations omitted). "[D]efense counsel's performance cannot be deemed deficient for failing to advance a novel legal argument." *People v Reed*, 453 Mich 685, 695; 556 NW2d 858 (1996).

Regarding prejudice, a defendant is "not required to show that, but for counsel's deficient performance, he *would have been acquitted*. Rather, prejudice is established where a defendant shows that but for counsel's deficient performance, there is a *reasonable probability* that the

outcome would have been different." *People v Heckaman*, ___ Mich ___, ___; 981 NW2d 495, 495 (2022) (quotation marks and citation omitted; emphasis added in *Heckaman*).

## C. FOURTH AMENDMENT LAW

Defendant's ineffective-assistance-of-counsel claim is predicated on whether defendant had a viable claim that the search of her vehicle violated the Fourth Amendment. "Both the United States Constitution and the Michigan Constitution guarantee to the people the right to be free from unreasonable searches and seizures." *People v Dagwan*, 269 Mich App 338, 342; 711 NW2d 386 (2005), citing US Const, Am IV; Const 1963, art 1, § 11. "Ordinarily, searches or seizures conducted without a warrant are unreasonable per se. And, generally, when evidence has been seized in violation of the constitutional prohibition against unreasonable searches and seizures, it must be excluded from trial." *Id*. (citations omitted). "The touchstone of the Fourth Amendment is reasonableness." *People v DeRousse*, 341 Mich App 447, 455; 991 NW2d 596 (2022) (quotation marks and citation omitted). "There are, however, a number of recognized exceptions to the warrant requirement[.]" *Dagwan*, 269 Mich App at 342.

In *Anderson*, 166 Mich App at 478-479, this Court stated that "an automobile may be searched without a warrant when there is probable cause to believe that evidence of a crime will be found in a lawfully stopped automobile." Further, "when an automobile is an instrumentality of the crime it may lawfully be seized and searched without a warrant." *Id*. at 479, citing *People v Sorrell*, 139 Mich App 707, 709-710; 363 NW2d 18 (1984) and *People v Cook*, 24 Mich App 401, 407; 180 NW2d 354 (1970). In general, "a search of a car without a warrant pursuant to the automobile exception is strictly limited in scope by the objects of the search and the places in which there is probable cause to believe they may be found[.]" *People v Bullock*, 440 Mich 15, 25; 485 NW2d 866 (1992). However, in *Anderson*, 166 Mich App at 460, 480, this Court upheld an impoundment and full search of the vehicle where the vehicle was found to be the instrumentality of the crime.

In *Anderson*, 166 Mich App at 459-460, the defendants were driving around Detroit stabbing individuals they saw on the street. One of the defendants exited the vehicle to stab some of the individuals and then got back into the vehicle to flee. *Id*. at 460. This Court concluded that because "the vehicle was used to transport defendants during the perpetration of the crime and to provide the escape for defendants after the crime, it also appears to have been an instrumentality of the crime itself." *Id*. at 479-480. Thus, this Court held that both the impound and search of the vehicle were valid. *Id*. at 480. This Court also noted that the officers had probable cause to search the vehicle and that there were exigent circumstances because the defendants were still at large. *Id*. at 479.

In *Cook*, 24 Mich App at 407-408, this Court similarly concluded that the vehicle, which had been used to kidnap the victim, was used as an instrumentality of the crime. This Court concluded that, "[u]nder these circumstances, the state police had reasonable cause to believe that the car had been used to effectuate the crime. The car itself was evidence of defendant's guilt. It was an instrumentality of the crime." *Id*. at 406-407. The police's "subsequent search of the car for [the victim's] fingerprints was closely related to the reason defendant was arrested, the reason his car had been impounded, and the reason it was being retained. The search was therefore valid without a warrant." *Id*. at 408-409.

In *Sorrell*, 139 Mich App at 708, the police seized the defendant's vehicle at the time of his arrest for negligent homicide resulting from a motor vehicle accident. In reliance on *Cook*, this Court concluded that "[t]he car was the instrumentality of the crime and, therefore, was properly seized and inspected." *Id*. This Court concluded that "the automobile was lawfully seized since the police officers plainly saw that it was an instrumentality of the crime. The officers were, therefore, free to conduct tests on the automobile to determine its evidentiary value." *Id*. at 710.[3]

Also relevant in this case is the inventory search exception. See *People v Toohey*, 438 Mich 265, 273-274; 475 NW2d 16 (1991). The inventory search exception is recognized "as part of the caretaking function local police officers are required to perform. To be constitutional, an inventory search *must* be conducted in accordance with established departmental procedures, which all police officers are required to follow, and *must not* be used as a pretext for criminal investigation." *Id*. at 283-284 (citations omitted). The legality of an inventory search depends on whether the vehicle was lawfully impounded. *People v Poole*, 199 Mich App 261, 265; 501 NW2d 265 (1993). If lawfully impounded, "the validity of the inventory search depends on whether there were standardized criteria, policies, or routines regulating how inventory searches were to be conducted." *Id*. The policy may give officers *some* discretion. *Id*. at 266. "[I]n order to establish that an inventory search is reasonable, the prosecution must establish that an inventory-search policy existed, all police officers were required to follow the policy, the officers actually complied with the policy, and the search was not conducted in bad faith." *People v Swenor*, 336 Mich App 550, 568; 971 NW2d 33 (2021).

In *Blair*, unpub op at 11, this Court rejected the argument that the community-caretaking exception authorized police to impound a legally parked vehicle. However, our Supreme Court vacated this Court's decision and remanded for the trial court to consider whether the officer complied with the procedure for impounding vehicles, whether the officer "acted in bad faith or for the sole purpose of investigation," and, if so, whether that rendered the search unconstitutional. *Blair*, 505 Mich at 1012, quoting *Colorado v Bertine*, 479 US 367, 372; 107 S Ct 738; 93 L Ed 2d

---

[3] It is questionable whether this line of cases is still valid. In *Cook*, 24 Mich App at 409, this Court relied on *Cooper v California*, 386 US 58; 87 S Ct 788; 17 L Ed 2d 730 (1967). *Cooper*, which concluded that "a warrantless search of an impounded automobile is reasonable if it is closely related to the reason for which its occupants were arrested and the automobile was impounded," was repudiated by *Chimel v California*, 395 US 752; 89 S Ct 2034; 23 L Ed 2d 685 (1969), which held "that a search incidental to an arrest is valid without a warrant only to the extent necessary to prevent the person arrested from grabbing a weapon or destroying evidence." *People v Sims*, 23 Mich App 194, 202-204, 207 n 4; 178 NW2d 667 (1970), aff'd 385 Mich 621 (1971). Nonetheless, this Court has continued to cite *Anderson* for the instrumentality exception. See *People v Strampel*, unpublished per curiam opinion of the Court of Appeals, issued June 24, 2021 (Docket No. 352557), p 5. "Although unpublished opinions are not binding precedent, MCR 7.215(C)(1)," they may be considered for their persuasive value. *People v Green*, 260 Mich App 710, 720 n 5; 680 NW2d 477 (2004). As will be discussed, even assuming *Anderson* is good law, we conclude that the instrumentality exception does not apply in this case.

739 (1987). In *Bertine*, 479 US at 372, the Court upheld an inventory search, concluding that there was no evidence that police acted "in bad faith for sole purpose of investigation."[4]

## D. APPLICATION

Defendant's counsel testified that he believed the inventory search was reasonable because the police were taking defendant into custody and impounding the vehicle. He did not know the Warren Police Department's policies, but he believed from experience that the policy of conducting an inventory search when the owner of the vehicle is arrested was valid. The trial court found that the inventory search was not valid, but the search was proper under *Anderson* and, therefore, trial counsel was not ineffective by failing to challenge the search and the evidence discovered in the search, i.e., the forged licenses.

Defendant first argues that the vehicle was not the instrumentality of the crime under *Anderson*. We agree. Defendant's vehicle was not the instrumentality of the theft of the cell phone that was committed inside the store. The vehicle was not used to effectuate that crime and the vehicle itself was not evidence of defendant's guilt. Nor was there any evidence that the vehicle was used to flee from the crime. In none of the other instrumentality cases discussed was the car merely used to hold stolen property. While the trial court found that the vehicle was an instrumentality of the crime of receiving and concealing stolen property, that was not the crime being investigated by the police in this case. Thus, we agree with defendant that the vehicle was not an instrumentality of the crime and the search was not permissible under *Anderson*.

Nonetheless, the question is whether the search was valid under another exception. Preliminarily, to the extent that the prosecution argues that the search was valid under either the automobile exception or search incident to arrest exception, these arguments are without merit. As noted, "a search of a car without a warrant pursuant to the automobile exception is strictly limited in scope by the objects of the search and the places in which there is probable cause to believe they may be found[.]" *Bullock*, 440 Mich at 25. In this case, the police were looking for the stolen cell phone and once it was found, the automobile exception did not justify further search. In addition, the search incident to arrest exception allows officers to search the area within the immediate control of the defendant. *People v Eaton*, 241 Mich App 459, 463; 617 NW2d 363 (2000). Defendant was arrested inside the store and, thus, the vehicle was not within defendant's immediate control.

Next, we consider whether the search was a valid inventory search, as this Court previously concluded. At the evidentiary hearing, all three officers testified that there was a policy for conducting inventory searches, and Officers Accivatti and Tucker believed that they acted in compliance with the policy. Officer Accivatti testified that the vehicle was impounded because evidence was found inside of it; that is, the inside of the vehicle had evidentiary value. And because the driver was arrested.

---

[4] Notably, *Bertine* also relied on *Cooper*. *Bertine*, 479 US at 372.

The Warren Police Department's policy lists several bases for inventory searches.[5] In particular, the policy provides, in part:

A. A vehicle may be impounded under police order under the following circumstances:

1. Recovered stolen vehicles

2. Vehicle was used as an instrument of a criminal act

3. Vehicle of evidentiary value from crime or accident

4. An arrest of the driver of a vehicle

a. The officer may release the vehicle to another licensed driver at the scene if the arrested driver approves, and the second party is in proper condition to drive the vehicle.

b. If the arrest is made at the home of the driver and the car is of no evidentiary value, it will be left at that location.

To the extent that the prosecution argues the vehicle was an instrument of a criminal act, we disagree for the reasons discussed. Moreover, Officer Accivatti did not state that as a basis for the search. Nonetheless, two of the other bases given by Officer Accivatti are contained in the policy. First, the policy authorizes a vehicle to be impounded if it has evidentiary value from the crime. In addition, the policy authorizes a vehicle to be impounded when the driver is arrested and there is no other person to drive the vehicle.

Defendant argues that the car had no conceivable evidentiary value because the stolen phone was found, there was no question regarding the identity of the suspect, and the police did not treat the vehicle as evidence. However, after the stolen phone was found inside of the vehicle, the officers' belief that the inside of the vehicle might have evidentiary value was not unreasonable. Officer Accivatti testified that everything was happening all at once; it was a very fluid and dynamic situation with the hostile suspects of a robbery coming back to the scene and being arrested, and he was concerned at that time that the vehicle had evidentiary value. Thus, this provision of the policy justified the search.

Regarding the arrest basis for impoundment of the vehicle, we note that the prosecution does not rely on that provision in its supplemental brief on appeal. Nonetheless, this provision also provided a basis for the search because defendant and Snell were both arrested. See, e.g., *Poole*, 199 Mich App at 265. It is a closer question whether the policy is valid under the Fourth Amendment in this regard. A policy similar to the Warren Police Department's policy was found reasonable in *Toohey*, 438 Mich at 286. However, it is not clear that the vehicle in that case was legally parked as the vehicle was in this case. This Court has distinguished *Toohey* and concluded

---

[5] The policy was admitted as Exhibit A at the evidentiary hearing.

that the caretaking concerns are not present when a vehicle is legally parked. See *People Cutts*, unpublished per curiam opinion of the Court of Appeals, issued May 6, 2004 (Docket No. 243126), p 4. As discussed, however, our Supreme Court vacated this Court's decision in *Blair*, 505 Mich at 1012, which reached a similar conclusion.

Accordingly, the Warren Police Department's policy authorized the impoundment and inventory search in this case. The trial court clearly erred by finding that the officers did not point to any provision within the policy that permitted the inventory search.

Although there was no direct testimony that all officers were required to follow the policy, the existence of this policy in written form is also evidence that all officers were required to follow it. In addition, the officers complied with the policy in this case because the vehicle was impounded on the basis of the grounds listed in the policy. They also completed Form #88, as required by the policy. The trial court found that the officers failed to list certain items on the form. However, Officer Tucker testified that there may have been other items in the vehicle that were not listed because he did not see them or because they were listed on the police report as evidence. In addition, the fact that the officers may have made a mistake on the form does not establish that they failed to comply with the policy for inventory searches.

Finally, the trial court did not err by finding that the officers were not acting in bad faith for the sole purpose of investigation. Officer Accivatti testified that the officers were looking for evidence of other crimes, i.e., for the purpose of investigation. However, he also testified that the search was to look for valuables because the car was being impounded. And, as discussed, he reasonably believed that the inside of the vehicle might have evidentiary value. Thus, the *sole purpose* of the search was not for investigation.

Defendant argues that even if the policy permitted the inventory search, the policy is too discretionary to be constitutional. The trial court appeared to agree, citing *People v Long*, 419 Mich 636; 359 NW2d 194 (1984). However, unlike in this case, there were no standards or established procedures for conducting inventory searches in *Long*. *Id*. at 646. Moreover, "[c]ontrary to defendant's argument, the policy may allow an individual officer to exercise some discretion." *Poole*, 199 Mich App at 266.

In summary, the impoundment and inventory search were proper because the Warren Police Department has a standard procedure for inventory searches, the officers complied with the procedure, and the officers were not acting in bad faith for the sole purpose of investigation. Because the inventory search was valid under the Fourth Amendment, trial counsel was not ineffective by failing to challenge the search and evidence discovered. Trial counsel did not inquire about the Warren Police Department's policy or question the officers about their compliance with the policy, but doing so would have been futile. "It is well established that defense counsel is not ineffective for failing to pursue a futile motion." *People v Brown*, 279 Mich App 116, 142; 755 NW2d 664 (2008). Also, because the evidence was admissible, trial counsel's

failure to challenge the search did not affect the outcome of the proceedings, i.e., there was no prejudice. Thus, the trial court did not err by denying defendant's motion for a new trial on the basis of ineffective of assistance of counsel and defendant's conviction and sentence are affirmed.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola